FROMAN v. J. R. KELLEY STAVE & HEADING COMPANY.

4-5159                                                120 S. W. 2d 164.

Opinion delivered October 10, 1938.

*Botts & Botts,* for appellants.

*E. W. Moorhead,* for appellee.

SMITH, J. Mr. and Mrs. Froman sued appellee for damages, and from a verdict and judgment against them is this appeal. Mr. Froman sued as next friend of his daughter, Peggy Louise Froman, and Mrs. Froman sued, in her own right to recover damages to compensate injuries which she had personally received.

The most important issues in the case are substantially reflected in an instruction given at the request of appellee reading as follows: "You are instructed that the burden of proof is upon the plaintiffs to establish by a greater weight of the evidence that their injuries or damages, if any, were caused by the willful and wanton operation of the automobile in disregard of the rights of the others, and that Otis Futrell was at the time an employee, or under the instructions of Hudkins, an employee of the defendant, using the automobile in line of duty for the defendant, and unless the plaintiffs have discharged that burden of proof they are not entitled to recover, and your verdict should be for the defendant."

Hudkins was appellee's manager, and in pursuance of his employment directed Futrell to drive an automobile, owned by appellee, from Hunter to DeWitt. No question is made as to the sufficiency of the testimony to

establish these two facts. Four persons accompanied Hudkins and Futrell on this trip. Three of these—Mrs. Stronger, her grandson, Lester Warner, and Mrs. Froman—rode on the rear seat of the car. Hudkins and Futrell rode in the front seat of the car, with Peggy between them.

During the progress of the trial appellants offered testimony tending to show that they were passengers, and not guests. This testimony was admitted over the objection that the complaint contained no such allegation. The court admitted this testimony, but was evidently of the opinion that it was not sufficient to establish the relation of passenger and carrier, and refused to give instructions which, if given, would have submitted that issue to the jury. Exceptions were saved to the refusal of the court to submit this question to the jury, and this assignment of error will first be disposed of.

Mrs. Stronger testified that she did Hudkins' laundry work, and took care of his police dog, and cleaned his car. It was not shown whether the car she cleaned was the car in which she embarked on the trip from Hunter to DeWitt, and it does not appear how the personal services rendered Hudkins inured to the benefit of appellee, his employer, so as to constitute the relationship of passenger and carrier. But, even so, Mrs. Stronger is not a party to this suit.

Mrs. Froman desired to visit her husband in DeWitt, where he was employed by appellee, and she had spoken to Hudkins on several occasions about taking her to DeWitt on some one of the numerous trips which Hudkins made from Hunter to DeWitt. Hudkins invited Mrs. Froman to go with him on the trip which resulted in her injury, and Peggy went along to see her father. As tending to establish her relation as a passenger Mrs. Froman testified as follows: "We talked about buying a Coca-Cola, and then he asked me what I was going to pay on the gasoline, and I told him to wait until I got to DeWitt I would get the money from my husband, and pay him, that I didn't have any money with me."

Hudkins denied that this conversation occurred, but admitted that, as a matter of pleasantry, he spoke to Mrs.

Froman about buying the drinks. She did not buy the drinks. It is evident that if there was any inquiry whether Mrs. Froman "was going to pay on the gasoline" it was made after the trip had begun, and there was no charge made or promise to pay before the trip began. Mrs. Froman's testimony is indefinite and undetermined as to what sum she "was going to pay on the gasoline." No demand for payment was made, and nothing was paid, and nothing more was said on that subject. Mrs. Froman testified that she thought no fare was due, as she and her daughter were both seriously injured before the completion of the trip.

We think the court did not err in treating this conversation as insufficient to create the relation of passenger and carrier, as it is evident that Hudkins did not require that Mrs. Froman pay any part of the cost of the gasoline as a condition upon which she would be taken to DeWitt. She alleged in her complaint and testified at the trial that Hudkins invited her to go with him, and assured her that he had a safe driver, and the invitation had been accepted and the trip begun before this casual conversation was had. It is certain that neither Mrs. Froman nor her daughter, Peggy, were traveling on any mission in which appellee was concerned. They were on the way to see their husband and father, a trip which could be of no advantage or benefit to appellee.

The Supreme Court of Michigan has gone further than we are required to go in holding that appellants were not passengers. That state has a statute which requires that "gross negligence or willful and wanton misconduct" be shown to authorize a guest to recover damages from his host.

In the case of *Morgan* v. *Tourangeau,* 259 Mich. 598, 244 N. W. 173, the plaintiff had bought and paid for a tank full of gasoline, but the Supreme Court of Michigan held that the plaintiff was a gratuitous passenger notwithstanding that fact. In that case the owner and driver of the car attempted to drive over a railroad crossing ahead of a train, and a collision occurred in which the

occupants of the car were severely injured. In holding that this testimony did not make a case under the statute quoted the court said: "Better judgment might have dictated to defendant that she should have endeavored to stop her car before it reached the crossing, but her failure to so determine, and her act in proceeding in the belief that it was the best thing to do under the circumstances, cannot be said to be an act of gross negligence or willful and wanton misconduct on her part."

Another case which goes further than we are required to go in holding that appellants were not passengers is that of *Askowith* v. *Massell*, 260 Mass. 202, 156 N. E. 875. In that case the Supreme Judicial Court of Massachusetts said: "The plaintiff asked the judge to rule that if he paid a proportionate share of the operating expenses 'he was not a gratuitous guest of the defendant'; that if the plaintiff was paying a share of the operating expenses 'as compensation for his transportation therein, that circumstance is to be considered in determining the defendant's duty of care toward the plaintiff'; that if the plaintiff was paying a share of the operating expenses 'as compensation for his transportation therein, he was a passenger for hire.' The requests were denied rightly. There was no evidence that the plaintiff was a 'gratuitous guest,' nor was he a passenger for hire. The automobile was not being operated under a contract, express or implied, that the defendant should be paid for transportation as a separate and distinct charge. It was uncontroverted that the understanding of the members of the party which included the defendant was that only the charges for gasoline, oil and garage bills incurred for their common benefit comprised the cost of the trip which was to be shared equally. The exceptions state, 'It was agreed among the members of the party that the expenses of the trip should be divided between them,' and nothing appears which gives any support to the contention that because the defendant contributed the use of his car under the conditions described he became a carrier for hire."

Having reached the conclusion that the trial court was correct in holding that appellants were not pas-

sengers, their right to recover damages is governed by § 1302, Pope's Digest, which reads as follows: ''That no person transported as a guest in any automotive vehicle upon the public highways of this state shall have a cause of action against the owner or operator of such vehicle for damages on account of any injury, death or loss occasioned by the operation of such automotive vehicle unless such vehicle was willfully and wantonly operated in disregard of the rights of the others.'' See, *Ward* v. *George,* 195 Ark. 216, 112 S. W. 2d 30, and cases there cited.

Appellants insist that the testimony shows they were entitled to recover under this statute, in that the ''vehicle was willfully and wantonly operated in disregard of the rights of others.''

The testimony offered in their behalf was, in our opinion, sufficient to support that contention. This testimony was to the effect that the car stopped at Brinkley, where Futrell and Hudkins drank beer and bought a bottle of wine. The testimony does not show the size of the bottle. The wine was consumed by Futrell and Hudkins and Mrs. Stronger's grandson. The ladies and Peggy drank none of the liquor, but the grandson testified that the wine which he drank made him drunk, and Mrs. Froman and Mrs. Stronger testified ''That both Futrell and Hudkins were visibly under the influence of the intoxicants, and that after becoming so they accelerated the speed of the car over the protests of the ladies. The car was driven so fast and recklessly that they almost ran into a truck, and then almost ran into a ditch, and when the ladies renewed their protests Hudkins inquired of Futrell if he was about to 'park' his car. The car continued at a high speed as it approached a curve in the road, and the driver 'undertook to make the curve going 50 or 60 miles an hour,' and was driving on the wrong side of the highway, and was meeting a car and pulled over on the right side of the curve and lost control of the car; that he whipped back and forth on the highway twice, and then the car left the highway on the right side, and turned over and turned around,

heading back the way they had come towards Clarendon." The car righted itself and proceeded under its own power to DeWitt, its destination, although it was badly wrecked and required repairs costing $165.

This testimony was sufficient to support, as a matter of fact, the finding that the "vehicle was willfully and wantonly operated in disregard of the rights of others." But we cannot say, as a matter of law, that it entitled appellants to recover, for the reason that it was sharply disputed. The testimony presented a question of fact, which was submitted to the jury under the instruction above quoted, and in another instruction to the same effect.

Hudkins and Futrell denied that they were drunk, although they admitted that they drank beer in Brinkley and drank wine after leaving that city. Their testimony was to the effect that the car was being carefully driven as they approached the curve at a speed of about 30 miles per hour, when the car ran into loose gravel, which caused it to skid and to turn over and turn around.

The court gave, over appellants' objection, an instruction reading as follows: "Under the law, as explained to you, proof of mere negligence on the part of the driver, Otis Futrell, however negligent he might have been in the operation of the automobile, would not entitle the plaintiffs to recover, and so in this case, if you find that Otis Futrell was guilty only of negligence, even of the highest degree, your verdict will be for the defendant."

The giving of this instruction was not error, although, having given that instruction, the court should have given another defining the difference between negligence and willful and wanton misconduct, and would, no doubt, have done so had that request been made. No such request was made.

In Malcom's Automobile Guest Law an entire chapter (VII) is devoted to "Willful and Wanton Misconduct Under the Guest Law Statutes," and scores of cases are cited in which the difference between negligence and willful and wanton misconduct is discussed. All the cases

appear to recognize the distinction, although a number point out the fact that the difference between gross negligence and willful and wanton misconduct is so narrow and indistinct that in many instances the question is one for the jury whether the negligence had become willful and wanton. The instant case is such a case. More of these cases appear to have originated in California than in any other state. We shall attempt no review of the distinctions that have been drawn in these cases between gross negligence and willful and wanton misconduct.

The Supreme Court of Vermont points out the distinction in the case of *Sorrell* v. *White,* 103 Vt. 277, 153 Atl. 359, in an opinion which comports with our own decisions on the question. Malcom, in his work on Automobile Guest Law, quotes from that case as follows: ". . . Our inquiry must be directed to the difference between gross negligence and willful negligence. There is a distinction between them. Willful negligence is a greater degree of negligence than gross.

"To be willfully negligent, one must be conscious of his conduct and, although having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury.

". . . 'willful negligence' means a failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another.

"Herein, we think, lies the distinction between gross and willful negligence as intended by the statute. Gross negligence falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. . . . Willful negligence involves the element of conduct equivalent to a so-called constructive intent.

"It must be admitted that this distinction is somewhat artificial, but artificiality is unavoidable when one attempts to define a phrase which in itself is a contradiction."

Our case of *Hodges* v. *Smith,* 175 Ark. 101, 298 S. W. 1023, was an automobile case, although it did not involve

our guest statute. In that case a judgment had been recovered for both compensatory and punitive damages. In reversing so much of the judgment as awarded punitive damages, Judge HART said: "It is earnestly insisted, however, by counsel for the defendant, that the court erred in submitting to the jury the question of punitive damages, and in this contention we think counsel are correct. In *St. L. S. W. Ry. Co.* v. *Owings,* 135 Ark. 56, 204 S. W. 1146, it was held that negligence alone, however gross, is not sufficient to justify the award of punitive damages. There must be some element of wantonness or such a conscious indifference to the consequences that malice might be inferred. In other words, in order to warrant a submission of the question of punitive damages, there must be an element of willfulness or such reckless conduct on the part of the defendant as is equivalent thereto. In the case at bar there is no element of wantonness or willfulness on the part of the person driving the car which overtook the plaintiff and ran into his car and thereby caused the injuries complained of."

Here, as we have said, there was testimony which would have sustained a finding of wantonness; but, as has been shown, that question was submitted to the jury, and has been concluded by the verdict.

Upon the whole case we find no error, and the judgment must be affirmed, and it is so ordered.