Hoover *v.* Harris *et al.*

(*Jackson,* April Term, 1941.)

Opinion filed May 24, 1941.

J. FRANK WARMATH, of Humboldt, for plaintiff in error.

TAYLOR, ADAMS & FREEMAN, LYLE B. CHERRY, and HOLMES & HOLMES, all of Trenton, for defendants.

MR. SPECIAL JUSTICE ALAN M. PREWITT delivered the opinion of the Court.

This case is before the Court on *certiorari* and grows out of an automobile collision in Arkansas on October 14, 1936. The parties to the suit reside in Gibson County.

There are two points raised: (1) Whether the Arkansas guest statute applies; (2) whether the Statute of Limitations has barred the right of action of the plaintiff.

This case was tried before the jury in the circuit court at Trenton, and at the close of the proof the court sustained a motion for a directed verdict in favor of the defendants and dismissed the plaintiff's suit. The parties will be referred to according to their status in the trial court.

From the judgment of dismissal, she appealed in error

to the Court of Appeals and that court reversed the judgment of the lower court and remanded the case for a new trial. It appears that the automobile belonging to the defendant Mrs. Ina Harris and driven by Miss Virginia Taylor collided with the automobile driven by Robert Stewart, a resident of Arkansas. The occupants of the Harris car had been on a trip to the Dallas exposition and were on their way home when the car collided with the Stewart car between Wynne and Memphis.

Much proof was taken and introduced on the trial of the case and there was a conflict in the testimony as to just how the collision took place. There was some proof that the Harris car was on the wrong side of the road and other witnesses testified that the Stewart car was on the wrong side of the road. It appeared that Mrs. Harris and her husband wished to make the trip to Texas and to visit relatives in Oklahoma, but did not care to drive the car themselves on such a long trip, and invited the plaintiff and two other young ladies, Miss Virginia Taylor and Miss Nell Hunt, to go with them as their guests and do all the driving. It further appears that Mr. and Mrs. Harris paid the expenses of the trip and the young ladies did the driving.

There are eleven counts in the plaintiff's declaration. In the first count it is alleged that the automobile in which the plaintiff was riding was being operated by the defendant Miss Virginia Taylor at a high and dangerous rate of speed, in the middle or on the wrong side of the road, "carelessly and heedlessly, and in an unlawful manner and in wanton disregard of the rights and safety of others, and heedless of the protests of Mr. Harris." It is further alleged that Stewart, who was driving the other car, was guilty of no negligence. The averments to these counts were adopted in all of the subsequent

counts, especially the eleventh, in which it is alleged that Stewart was also negligent, and that the collision was the proximate result of the joint and concurrent negligence of the drivers of both cars. The second count charges ordinary negligence and the third count again charges gross negligence, being in substance the same as the first count. The fourth count charges that Virginia Taylor was only sixteen years of age and was unacquainted with the road on which she was driving and that Mrs. Harris knew of these facts.

In the fifth count the plaintiff alleges that she was riding as an invited guest of the defendants; in the sixth count that she was riding as a passenger at the request and for the benefit of the defendant Mrs. Ina Harris; in the seventh count that she was riding as the agent of the defendant, and in the eighth count that she was riding as the servant of the defendant; in the ninth count that she was riding as a passenger for hire of the defendant, and in the tenth that she was riding and was on a joint enterprise with the defendants.

The defendants' filed pleas of not guilty and contributory negligence, the Statute of Limitations, and the Arkansas guest statute, which relieves the host or owner of liability to the guest "unless such vehicle was wilfully and wantonly operated in disregard of the rights of the others."

The motion for a directed verdict was a general one and the trial judge did not state the ground or grounds upon which it was sustained.

The Arkansas guest statute of 1935, Act 61, reads as follows:

"An Act to Regulate the Liability of Owners or Operators of Automotive Vehicles to Guests Riding Therein.

"Be It Enacted by the General Assembly of the State of Arkansas:

"Section 1. That no person transported as a guest in any automotive vehicle upon the public highways of this State shall have a cause of action against the owner or operator of such vehicle for such damages on account of any injury, death or loss occasioned by the operation of such automotive vehicle unless such vehicle was wilfully and wantonly operated in disregard of the rights of the others.

"Section 2. The term guest as used in this Act shall mean self-invited guest or guest at sufferance.

"Section 3. That all Acts or parts of Acts in conflict herewith be and the same are hereby repealed and this Act shall take effect and be in force from and after its passage."

There is no proof in the record that the automobile was wilfully and wantonly operated in disregard of the rights of others. As before stated, there is testimony that the Harris car was on the wrong side of the road and there is likewise testimony that the Stewart car was on the wrong side of the road when the collision took place, but there is no proof of any wilful or wanton conduct on the part of the defendants.

In construing this statute the Arkansas court seems to make no distinction in the terms "ordinary guest," "self-invited guest," or "guest at sufferance." *Roberson* v. *Roberson*, 193 Ark., 669, 101 S. W. (2d), 961.

The Court of Appeals held that the Arkansas guest statute had no application because plaintiff was taken along on the trip by Mrs. Harris to drive the automobile. Plaintiff testified on this point as follows:

"Q. Tell the Court and Jury as nearly as you can just how this trip was first discussed and by whom? A.

I guess, about a week before we went, Mrs. Harris said she might go on a trip.

"Q. Where? A. To the Centennial and to visit relatives, and she asked that I go, and she said she would have liked for Nell Hunt to go, but his nephew might go and there would not be enough room and she had already asked Virginia, but the nephew did not go, and Nell went.

"Q. When was this trip later discussed? A. Just— not long before we went.

"Q. What was this discussion, and what was said? A. She asked us to go, and the ones going were to drive."

Plaintiff further testified that Mrs. Harris "did not drive out," meaning, perhaps, that Mrs. Harris did not drive out of town, and that Mr. Harris was paralyzed on the right side and could not drive efficiently and easily, except for a short distance; that she (plaintiff) had driven Mrs. Harris before, but not on a trip; that it was the custom of Mrs. Harris to have someone drive for them, and did not take long trips and drive themselves. Plaintiff further testified that she and Nell Hunt did most of the driving on this trip; that neither Mr. nor Mrs. Harris did any driving.

Plaintiff admitted that Mr. and Mrs. Harris paid all of the expenses of the trip, including plaintiff's hotel bills and meals.

Mrs. Harris testified that she invited the three young women to go on the trip, with all expenses paid. She was asked upon cross-examination:

"Q. Who did the driving on this trip? A. First one and then another. . . .

"Q. Just the three girls drove? A. Yes, sir.

"Q. It was the understanding before you left on Thursday that they would drive? A. No, sir."

Mrs. Harris says that she could drive, but usually had someone else to do the driving. Nell Hunt and Virginia Taylor testified in the case, in substance, that they were invited by Mrs. Harris to go on this trip. Neither say that the invitation was conditioned on their doing a part of the driving, though both did take turns at driving.

■ The fact that it is contemplated that some indicated benefit will accrue to the operator of the automobile to which the carriage will in some degree contribute collaterally or by way of inducement is not sufficient to make the carriage one for mutual benefit.

■ In determining for whose benefit the journey is undertaken and whether the person carried is a guest within the meaning of the statutes, not only the specific act of transportation but also the general relationship of the parties may be considered. *Russell* v. *Parlee,* 115 Conn., 687, 163 A., 404; *Knutson* v. *Lurie,* 217 Iowa, 192, 251 N. W., 147.

■ Under the facts of this case we think it clear that the plaintiff was an invited guest of the defendants.

In *Ward* v. *George,* 195 Ark., 216, 112 S. W. (2d), 30, 33, it is said:

"The law of the subject is discussed at length, with numerous citations of cases, in chapter 36 of Berry on Automobiles, and in chapters 63 and 64 of Blashfield's Cyclopedia of Automobile Law and Practice; but we shall attempt no review of these cases and the distinction between them.

"In general terms these text-writers say that in determining who are 'guests' within the meaning of the automobile statutes the enactments should not be extended beyond the correction of the evil which induced their enactment, as they are in derogation of the common law. A general summary of the law appearing at section 2292

of Blashfield's Cyclopedia of Automobile Law and Practice reads as follows:

" 'One important element in determining whether a person is a guest within the meaning and limitations of such statutes is the identity of the person or persons advantaged by the carriage. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operator for their common benefit, or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments. Of course, a passenger for hire is not within their operation, regardless of whether the passenger or someone else pays or promises to pay for the transportation.'

"Here, it is expressly conceded that the relationship of master and servant did not exist, and appellee did not even indirectly pay for his ride. Their association was voluntary and for their mutual pleasure. There was no occasion for the trip to Wildcat Mountain except to entertain the Pine Bluff boys. It was just such a trip as is taken on innumerable occasions by innumerable boys and girls, and their elders as well, and our guest statute, *supra,* denies a recovery to any member of such a party except for injuries resulting from the willful or wanton operation of the vehicle."

Again, in *Froman* v. *J. R. Kelley Stave & Heading Co.,* 196 Ark., 808, 120 S. W. (2d) 164, it is said in appellant's action against appellee to recover damages to compensate injuries received in an accident where an issue was

made as to whether appellant was a passenger or a guest, she claiming that she was a passenger because she was to pay part of the expenses of the journey, testimony that she talked about buying coca cola and gasoline by way of pleasantry after they began the trip was too indefinite to establish the relation of carrier and passenger. Since appellant was a guest and not a passenger while riding in appellee's automobile, she was not, under said guest statute, entitled to recover for injuries sustained in an accident without showing that the vehicle was at the time being "wilfully and wantonly operated" in disregard of her rights as such.

*Froman* v. *Stave & Heading Co., supra,* also cites with approval *Askowith* v. *Massell,* 260 Mass., 202, 156 N. E., 875, 876. In that case the Supreme Judicial Court of Massachusetts said:

"The plaintiff asked the judge to rule that if he paid a proportionate share of the operating expenses 'he was not a gratuitous guest of the defendant'; that if the plaintiff was paying a share of the operating expenses 'as compensation for his transportation therein, that circumstance is to be considered in determining the defendant's duty of care toward the plaintiff'; that if the plaintiff was paying a share of the operating expenses 'as compensation for his transportation therein, he was a passenger for hire.' The requests were denied rightly. There was no evidence that the plaintiff was a 'gratuitous guest,' nor was he a passenger for hire. The automobile was not being operated under a contract express or implied that the defendant should be paid for transportation as a separate and distinct charge. It was uncontroverted that the understanding of the members of the party which included the defendant was that only the charges for gasoline, oil and garage bills incurred for their common

benefit comprised the cost of the trip which was to be shared equally. The exceptions state, 'It was agreed among the members of the party that the expenses of the trip should be divided between them,' and nothing appears which gives any support to the contention that because the defendant contributed the use of his car under the conditions described he became a carrier for hire.''

In the view we take of the case, the Arkansas guest statute, as above set out, applies to the facts in the record, and, as before stated, there is no proof showing any negligence or wanton or wilful conduct in disregard of the rights of others. And it further appears that the plaintiff was an invited guest of the defendants, and this being so, it is not necessary for us to consider the question of the Statute of Limitations, as we are of the opinion that the trial judge was correct in sustaining the motion for a directed verdict and that the Court of Appeals was in error in holding otherwise, and the judgment of the latter court is accordingly reversed and plaintiff's suit dismissed.