F. A. AUTRY and LAURA AUTRY, Appellants, v. WARREN SANDERS, Respondent.—No. 38314.—169 S. W. (2d) 944.

Division One, April 6, 1943.

*W. D. Roberts* and *Gardner & Gardner* for appellants.

*H. D. Green, Jr., A. W. Landis* and *Arthur W. Allen* for respondent.

1132

HYDE, J.—This is an action for $10,000.00 for wrongful death of plaintiffs' daughter, while riding as a guest in defendant's automobile. The casualty occurred in Arkansas and defendant's answer set out the provisions of that state's automobile guest act. The jury found for defendant and plaintiffs have appealed from the judgment entered.

Plaintiffs assign error in instructions given at defendant's request; and in excluding evidence offered by plaintiffs. However, defendant contends that plaintiffs failed to make a case of liability under the Arkansas law; that the court should have sustained his demurrer to the evidence; and that the assignments concerning instructions and evidence are immaterial. The applicable statutes (secs. 1302-03-04, Pope's Digest of Statutes of Arkansas—1937) are, as follows:

"Section 1302. That no person transported as a guest in any automotive vehicle upon the public highways of this State shall have a cause of action against the owner or operator of such vehicle for damages on account of any injury, death or loss occasioned by the operation of such automotive vehicle *unless such vehicle was wilfully and wantonly operated in disregard of the rights of the others.*

"Section 1303. The term guest as used in this Act shall mean self-invited guest or guest at suffrance.

"Section 1304. No person transported or proposed to be transported by the owner or operator of a motor vehicle as a guest, without payment for such transportation, nor the husband, widow, executors, administrators or next of kin of such person, shall have a cause of action for damages against such owner or operator, or other persons responsible for the operation of such car, for personal injury, including death resulting therefrom, by persons while in, entering, or leaving such motor vehicle, *unless such injury shall have been caused by the wilful misconduct of such owner or operator.* And in no event shall any person related by blood or marriage within the third degree of consanguinity or affinity to such owner or operator, or the husband, widow, legal representative, or heirs of such person, have a cause of action for personal injury including death resulting therefrom, against such owner or operator while in, entering, or leaving such motor vehicle, provided this Act shall not apply to public carriers." (Our italics.)

These statutes enacted in 1935 (sec. 1304, in a separate bill from the first two sections) were held to be constitutional in Roberson v. Roberson (Ark.), 101 S. W. (2d) 961. That case (in which plaintiff obtained judgment for $5000.00), based on negligence charges of "a defective casing" and "driving said automobile at a high, excessive and dangerous rate of speed," was reversed and dismissed. Defendant argues that the most favorable view of plaintiff's evidence could show no more than gross negligence on the part of defendant, and that this is not sufficient for recovery under the Arkansas statutes.

Plaintiffs' daughter was killed in a collision between defendant's automobile and ▇ a truck near the western limits of Crossett, Arkansas, about 8:30 p. m. in May, 1940. Defendant was driving east behind a light truck, called a "pick-up", belonging to the Crossett Lumber Company (defendant was employed by this Company) and driven by one of its employees. Plaintiffs' daughter and Miss Walters, who were riding in the front seat of defendant's car with him, were also employees of the Lumber Company. The highway was paved with "blacktop" and was estimated to be from 16 to 21 feet wide, with a center line painted on it. Defendant stopped his car at a railroad crossing about a mile west of Crossett and the "pick-up" passed him. He then followed the "pick-up" east along the high-

way, until it slowed down approaching a lighted bus which was stalled at the south edge of the highway more than 200 yards east of the railroad crossing. There were flares placed to show the position of this bus, one about 30 yards in front of it, one about the same distance behind it, and another on the highway near the left rear wheel, which was on the blacktop. The highway was upgrade from the railroad crossing to a point beyond the bus, but was straight for more than a mile. It had been raining and was still sprinkling and was misty and foggy.

Plaintiffs' evidence (the driver of the "pick-up," the driver of the truck involved in the collision, and also two men who came to the scene of the collision afterwards to move the cars) was to the effect that the "pick-up" (traveling east) passed the truck (traveling west) before the "pick-up" reached the bus (west of it), and without crossing the center line of the highway. It also showed that defendant's car, following the "pick-up," 50 yards or more behind it, came across the center line and ran into the truck about 75 to 100 yards west of the bus. The truck driver estimated that defendant's car was traveling at least 40 miles per hour. The truck driver said that when he saw defendant's car angling across the center line he pulled to the right and stopped with part of the front end of his truck off the blacktop before the collision occurred. After the collision, the car and the truck were found with both of their front wheels on the north shoulder of the highway off the blacktop. They were locked together with only the left rear wheel of each on the pavement. The driver of the "pick-up" saw the headlights of the truck and there is no claim they were not lighted.

According to defendant's testimony, the "pick-up" slowed down and came almost to a stop at the flare west of the bus and then pulled to the left (north) to go around the flares. Defendant said he had come to a complete stop and shifted to low gear to follow the "pick-up" around the bus. He said that the "pick-up" was a little over the left of the center line as it went around the bus and that his car was in the same position, about 100 feet back of it, not traveling over 15 miles per hour. He saw the "pick-up" turn back to the south side of the pavement, but said he never saw the lights of the westbound truck and did not know it was approaching until he was knocked unconscious by the collision. Defendant said the flares around the bus gave a very bright light. Miss Walters and some of the men riding in the "pick-up" substantially corroborated defendant's account. Plaintiffs' evidence fixed the place of the collision about 100 yards west of the bus, while defendant's evidence tended to show it was much closer to it.

Plaintiffs argue thus: "We submit that such conduct discloses more than ordinary negligence. It discloses more than gross negligence. It was wilful and wanton. He admits turning his car to the

left on to the westbound traffic lane; hence, there can be no question that that part of his act was wilful. He makes no attempt to show that he was confused, or that the turning of his car on to the westbound traffic lane was accidental or unintentional. . . . The truck with lights plainly visible was approaching from the east along this level stretch of highway somewhere between him and the "pick-up" which had gone on east. He admits a movement of his car which would inevitably carry him into the path of imminent danger."

Thus plaintiffs' position is that knowingly and intentionally crossing the center line of the highway, when by the exercise of ordinary care defendant could have seen the lights of the truck approaching on that side, was wilfully and wantonly operating his car in disregard of the rights of others within the meaning of the Arkansas guest statute.

In the latest cited case under this statute, Edwards v. Jeffers (Ark.), 162 S. W. (2d) 472, the evidence most favorable to plaintiffs was succinctly stated in the dissenting ▆▆▆ opinion (only one judge dissented) as follows:

"The positive evidence shows that she (defendant) was driving the automobile over a gravel road with very sharp curves in it at about seventy miles an hour or so rapidly that she could not negotiate the curves without running the automobile into the ditch. Appellee (plaintiff) protested at the speed she was driving and requested her to slow down two or three times. Irene Edwards (defendant) responded by saying that she knew how to drive her car and how fast to go."

The view taken in the dissenting opinion was that "at the time of the injury Irene Edwards was operating the automobile in a wilful and wanton manner, and appellant is bound by the verdict of the jury"; and that "the verdict of the jury is supported by practically the undisputed evidence in the case."

However, the opinion adopted held there was no case made by plaintiff, saying:

"This court has laid down the rule that in order to sustain a recovery under our Guest Statute, supra, that the negligence must be of a greater degree than even gross negligence, that it must be wilful or wanton. In the recent case of Froman v. J. R. Kelley Stove & Heating Co., 196 Ark. 808, 120 S. W. (2d) 164, 167, the difference between gross and wilful and wanton negligence is very clearly defined. . . . If it could be said that Mrs. Edwards' conduct in driving the car amounted to gross negligence (and we do not think it did) still this is not sufficient to warrant recovery under the statute, supra."

In the Froman case, the court adopted the distinctions stated by the Supreme Court of Vermont in Sorrell v. White, 103 Vt. 277, 153 Atl. 359, as follows:

"Willful negligence is a greater degree of negligence than gross.
. . .

"To be willfully negligent, one must be conscious of his conduct, and although having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury.

". . . 'willful negligence' means a failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another. . . .

"Herein, we think, lies the distinction between gross and willful negligence as intended by the statute. Gross negligence falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. . . . Willful negligence involves the element of conduct equivalent to a so-called constructive intent."

The Arkansas Supreme Court considered this as similar to its rule on punitive damages, that "there must be an element of willfulness or such reckless conduct on the part of the defendant as is equivalent thereto." In the Froman case, it was held that a jury case was made because it was shown that the driver and his manager had been drinking, and continued to drive when both were intoxicated. The evidence showed that when "visibly under the influence of the intoxicants," they "accelerated the speed of the car (over plaintiff's protest) . . . almost ran into a truck, and, then almost ran into a ditch"; and (although protests were continued) undertook to make a curve at high speed "driving on the wrong side of the highway . . . meeting a car" and turned over in escaping a collision with it. This is the only Arkansas case cited by either party which has held there was a jury case made under its guest statutes.

However, in Splawn v. Wright (Ark.), 128 S. W. (2d) 248 (where the driver ran into a bridge railing, and the charge was "willful and wanton operation of his automobile, in driving 'at a very excessive, fast and dangerous rate of speed over a road made slick and rough by recent rains'; in not 'stopping or slowing down said automobile when so requested by the plaintiff'; and 'by attempting to turn on the heater in said automobile while traveling at a high, excessive and dangerous rate of speed' '') the court reversed a judgment for plaintiff and dismissed the case. The court commented that there was no evidence that the driver had been drinking and held that he "was guilty of nothing more than a simple act of negligence by reaching to the right to adjust the heater in the front of the car." The court quoted with approval from Surgan v. Parker (La. App.), 181 So. 86 (a decision by the Court of Appeals of Louisiana ruling a case under the Arkansas guest statute), saying: "Cases will rarely arise in which it can be shown to a court's satisfaction that collisions or upsets of automobiles, with resultant injury to guests, occur because of the

'willful misconduct' of the operator. Those who operate automobiles should have (and when mentally normal, do have) a conscious desire to ▪▪▪ avert injury to themselves in such operation, at least coextensive with that not to injure their guests; and since to operate a car in a willfully negligent manner offers a threat to security from injury as great to the operator as it does to the guest, evidence to prove that grade of negligence should be unusually strong and convincing before the operator can and will be convicted of such." The Arkansas court also quoted and approved this again in its most recent case, Edwards v. Jeffers, supra, hereinabove discussed. [See also Ward v. George (Ark.), 112 S. W. (2d) 30, where the plaintiff asked the defendant to drive slower and the car skidded into a ditch when a cow came into the road.]

In this case, the evidence does not disclose that defendant was conscious that a westbound truck was approaching and turned his car across the center line of the highway into its path, knowing it was there. It may be conceded that he was very inattentive and grossly negligent in failing to see its lights and discover its approach. However, the situation was confusing, especially in view of the rainy, foggy weather conditions. A driver's attention could easily be distracted with the flares around the lighted bus, and with the other car ahead (the "pick-up"), also lighted, which defendant was following. All of these lights would make it more difficult to see the lights of the approaching truck, particularly in foggy weather. While defendant, of course, did intentionally turn his car across the center line, as argued, nevertheless, the only reasonable inference, from the whole evidence, is that he did so to have a greater margin of safety in going around the bus. Therefore, we see no reasonable basis for an inference that he knew of the near approach of another vehicle, and that it would immediately occupy that same portion of the highway, at the time he drove over the center line. In other words, the evidence shows that in the exercise of ordinary care he should have seen it, not that he did see it before he turned across the center line of the highway. Our conclusion is that this evidence is not sufficient to make a jury case of "wilful misconduct" or that defendant's car "was wilfully and wantonly operated in disregard of the rights of others" as these terms are defined and construed by the Supreme Court of Arkansas.

The judgment is affirmed. All concur.