## 34754. THOMAS *v*. ETHERIDGE.

DECIDED DECEMBER 2, 1953—REHEARING DENIED DECEMBER 16, 1953.

369

*Peacock, Perry & Kelley, Jesse W. Walters,* for plaintiff in error.

*S. B. Lippitt,* contra.

SUTTON, C. J.  ■ It is alleged in the petition that the collision and the injuries sued for occurred in Arkansas; that the defendant's acts were done with reckless indifference to the consequences, in wilful and wanton disregard of the plaintiff's safety, and in violation of the laws of Arkansas, and that these acts amounted to wilful misconduct under the law of Arkansas. Whether or not the defendant violated the laws of Arkansas or was chargeable with wilful misconduct under the law of that State, depends upon the applicable Arkansas laws; and, as against a general demurrer, the petition does not affirmatively show as contended by the demurrant that the defendant's alleged acts were not wilful misconduct under the law of Arkansas, and so the petition set forth a cause of action. In considering a general demurrer to a petition, allegations of facts well pleaded must be taken as true; and, upon an application of this principle

of law to the petition in this case, the petition was not subject to the general demurrer, and the court did not err in overruling said demurrer.

But, under the pleadings and the evidence introduced on the trial of the case, a different question is presented in considering whether the verdict for the plaintiff was authorized. The collision resulting in the plaintiff's injury occurred in the State of Arkansas, and it is unquestioned that the substantive rights of the parties are controlled by the law of that State. Certain Arkansas statutes and some Supreme Court decisions of that State construing and applying those statutory provisions were properly before the trial court.

Arkansas Statutes, 1947, § 75-913 (Acts 1935, No. 61, § 1, p. 138), is as follows: "No person transported as a guest in any automotive vehicle upon the public highways of this State shall have a cause of action against the owner or operator of such vehicle for damages on account of any injury, death or loss occasioned by the operation of such automotive vehicle unless such vehicle was wilfully and wantonly operated in disregard of the rights of the others."

Arkansas Statutes, 1947, § 75-915 (Acts 1935, No. 179, § 1, p. 481), is substantially to the same effect, and the following portions thereof are applicable: "No person transported . . . by the owner or operator of a motor vehicle as a guest, without payment for such transportation . . . shall have a cause of action for damages against such owner or operator . . . for personal injury . . . by persons while in . . . such motor vehicle, unless such injury shall have been caused by the wilful misconduct of such owner or operator. . ."

The statute first above set out was held to be constitutional in Roberson v. Roberson, 193 Ark. 669 (101 S. W. 2d 961); and, in Ward v. George, 195 Ark. 216 (112 S. W. 2d 30), the question before the court was whether or not the plaintiff was a guest. In the following two cases, decided by a unanimous court, it was held that the evidence was sufficient to raise a jury question as to the driver's wilful and wanton negligence: Froman v. J. R. Kelley Stave &c. Co., 196 Ark. 808 (120 S. W. 2d 164), in which there was evidence that the driver had been drinking wine shortly before speeding at 60 miles per hour around a curve on the wrong side of the road, when, to avoid an automo-

bile approaching from the opposite direction, he went into a skid and off the road; and McAllister v. Calhoun, 212 Ark. 17 (205 S. W. 2d 40), where the evidence was that the driver was proceeding at 80 miles per hour and was not heeding the protests of her guest when she lost control of the car and went off the road.

In the three following cases, in each of which there was a dissent, it was held that there was no evidence of wilful and wanton operation: Splawn v. Wright, 198 Ark. 197 (128 S. W. 2d 248), in which it was shown that the driver, while proceeding at 45 miles per hour along a straight, wet gravel road and reaching down to adjust the heater of the car, turned slightly to the side of the road and struck a bridge; Edwards v. Jeffers, 204 Ark. 400 (162 S. W. 2d 472), in which testimony that the driver was speeding at 60 or 70 miles per hour when he overturned on a curve on a gravel road was found not to be borne out by the slight damage to the automobile; and Cooper v. Calico, 214 Ark. 853 (218 S. W. 2d 723), where there was some evidence of previous drinking, but not of intoxication, on the part of the driver who, in attempting to park at a roadside drive-in restaurant, allowed his automobile to roll back out onto the highway, where it was struck by another car speeding along the highway.

In the Splawn case, supra, it was said, "Whether an automobile is being operated in such a manner as to amount to wanton and wilful conduct in disregard of the rights of others must be determined by the facts and circumstances in each individual case." And in Cooper v. Calico, supra, referring to the other four cases previously decided, the court stated: "We have approved the language of other courts where it was said that wilful negligence is greater in degree than gross negligence; that to be wilfully negligent one must be conscious of his conduct—that is, he must, in the light of surrounding circumstances, comprehend that his act will naturally or probably result in injury. Differently expressed, wilful negligence 'involves the element of conduct equivalent to a so-called constructive intent.'"

The courts of this State have laid down similar definitions of wanton conduct. In *Arrington* v. *Trammell*, 83 *Ga. App.* 107, 113 (62 S. E. 2d 451), where the question was whether the evidence authorized a finding that the defendant's conduct amounted to wantonness as alleged, it was ruled: "Whether certain con-

duct amounts to wantonness is a jury question if reasonable minds might disagree as to whether or not it is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit of actual intent. On the other hand, where such conduct is susceptible of but one inference that it is not negligent, or, in cases of wantonness, that it is not wanton, and reasonable minds could draw only such inference therefrom, then the absence of negligence or the absence of wantonness is a question of law for the determination of the court. [Citing.]"

Taking the view of the evidence which tends to sustain the jury's verdict for the plaintiff it appears that Mrs. Etheridge, the plaintiff, was traveling as a guest with C. W. Thomas, the defendant, from Hot Springs, Arkansas, towards Memphis, Tennessee, on the afternoon of May 29, 1952. Leaving Forrest City, Arkansas, they were following two truckloads of Mexican laborers, who were talking and making signs as they stood in the trucks ahead of Thomas. He and Mrs. Etheridge were conversing and watching the Mexicans. The trucks were moving slowly, and Thomas had been unable to pass them for about 25 or 30 minutes because of the hills and curves. Traffic on the highway was described as heavy, with about one car passing every two minutes. After coming down from the hills onto level bottom land, Thomas accelerated to 40 miles per hour, passed one of the trucks, and looked to see if there were any cars coming after he started to pass the other truck. He could see a good way upon a long, gradual curve to his left but did not see any cars approaching him. As Thomas testified, "I started around the truck and I got to looking at the Mexicans and didn't go on around like I should—I was looking at the Mexicans and talking and just kinder sashayed along there and didn't go around and, the first thing I knew, the car [approaching from the opposite direction] was right on me." Mrs. Etheridge screamed, and Thomas looked up. He accelerated his car, swerved to the right, sideswiped the approaching car, and went off of the road to his right. Afterwards, Thomas admitted that the collision was due to his fault.

The collision seems to have occurred as Thomas's car entered a straight stretch of the highway after going around the long, gradual curve to his left. The cars involved came to rest in the ditches on the opposite side of the highway and about 200 yards

apart, with the other car on the inside of the curve and Thomas's car past the curve. Photographs showed only a small clump of scrub trees as an obstruction to Thomas's view of the curve to his left and of the straight portion of the highway beyond the curve.

Passing another vehicle traveling in the same direction upon a two-lane highway where traffic is heavy is frequently a hazardous undertaking. Conditions may be such that it is hard to determine with absolute certainty that a vehicle approaching from the opposite direction will not be met before completely overtaking the automobile proceeding in the same direction. The speed of the overtaken vehicle, the speed of the passing driver's automobile, and the speed of any automobile approaching from the other direction, which is especially difficult to estimate, are three things which complicate the problem of passing even upon a straight and level highway. Where there are curves or hills and depressions and the way ahead is not clear, the risk involved is greatly increased, due to the possibility that an automobile may be approaching from the opposite direction, when neither the passing driver nor the driver of the approaching car is aware of the other's presence until a collision is impending.

The plaintiff testified that the defendant was a good driver, and as such he must have been aware of these risks. He looked ahead before he passed each truck, and he testified that he could see "a good long ways" and did not see any cars. The vehicle which the defendant later sideswiped must have then been somewhere along the straight portion of the highway, to the left of the defendant's car. The defendant probably would not have seen the approaching car by looking ahead along the curve, and may not have seen it because of the obstruction presented by the clump of trees to his left and on the inside of the curve. But if Thomas did find that he had an assured clear distance ahead in which to pass when he first looked ahead—on the assumption that any approaching vehicles, whether seen or not, would be traveling at a normal rate of speed—his own testimony shows that he voluntarily gave up his continued assurance of a clear distance ahead by directing his attention to the occupants of the truck being overtaken, instead of looking ahead to see whether any automobiles were approaching as he passed. Thomas testified that he got to looking at the Mexicans and talking, and that

he did not go on around as he should have done; that he "just kinder sashayed along there," beside the truck. He had been unable to pass the trucks before and had become somewhat impatient, which shows that he was aware of the heavy traffic on the road and of the possibility of an automobile approaching from the opposite direction.

Under these circumstances, the jury was authorized to find that the defendant was guilty of wilfully and wantonly operating his automobile in disregard of the rights of others, and of wilful misconduct, within the meaning of the Arkansas statutes above quoted. The evidence was sufficient to show that the defendant was conscious of his conduct and must have comprehended that to drive upon the left side of a curving, heavily traveled highway, where his view of the highway beyond the curve was partially obscured, and to look away voluntarily (not as the result of some sudden human impulse) from the highway to the occupants of the truck which he was passing, would naturally or probably result in injury.

Although the two Arkansas cases cited above, upholding recovery under the Arkansas Automobile Guest Statutes, involve proof of speeding or of intoxication on the part of the driver, and although there is no evidence of either of these elements in the present case, we see no difference, so far as the law and consequences are concerned, between the misconduct of voluntarily slowing reaction time and impairing one's judgment through drinking alcoholic beverages and, as in the present case, the defendant's deliberately blinding himself to approaching traffic while he was on the left side of the road by looking away from the road and watching the occupants of the vehicle which he was overtaking. In either of such events, we think that the conduct of the defendant would be subject to and controlled by the principle of law as enunciated by the Supreme Court of Arkansas in the Cooper case, supra: "That to be wilfully negligent one must be conscious of his conduct—that is, he must, in the light of surrounding circumstances, comprehend that his act will naturally or probably result in injury. Differently expressed, wilful negligence 'involves the element of conduct equivalent to a so-called constructive intent.'" The evidence, under the provisions of the Arkansas law as pleaded and proved, was sufficient to authorize the verdict for the plaintiff, and the court did not err in denying

the defendant's motion for new trial.

*Judgment affirmed. Gardner, P. J., Townsend, Carlisle and Quillian, JJ., concur. Felton, J., dissents.*

FELTON, J., dissenting. I do not think that the facts proved are sufficient to authorize a jury to find the defendant guilty of wilful and wanton misconduct under the laws of Arkansas.