37444. HICKS, Administrator *v.* ASBURY, by Next Friend.

DECIDED JANUARY 28, 1959.

*Smith, Field, Doremus & Ringel, Sam F. Lowe, Jr.,* for plaintiff in error.

*William T. Dean, Clyde R. Ross, John L. Westmoreland, John L. Westmoreland, Jr.,* contra.

FELTON, Chief Judge. ■ Since the plaintiff alleged that at the time of the collision or upset he was a guest in the truck being driven by the defendant's decedent, such an allegation was an admission in judicio and could not be disputed by the

plaintiff so long as that allegation remained in his petition. Under such allegation the defendant's decedent owed the plaintiff the duty to exercise slight care, and the contention that the evidence showed that the decedent and plaintiff were joint adventurers in the operation of the truck at the time of the upset is without merit.

■ The remaining question to be determined is whether or not the evidence authorized the jury to find that the defendant's decedent was guilty of gross negligence in the operation of a motor vehicle.

Robert Brewster testified in part on behalf of the plaintiff as follows: "Q. Who all was in the truck at the time it turned over? A. Me and Lish and Pete Conyers Davis. Q. Now will you tell the jury and the Court what the condition of that road was at the time you all had the turn over down there? A. It had been scraped and it was a pile of dirt in the road, I would say it was across the road about this high and about this high. Q. Were you able to see that pile of dirt from where you were sitting in the truck? A. Yes sir. Q. Was it that way all along the road, or just some places in the road? A. Just some places in the road. Q. What is the condition of the dirt out there, is it sandy or clay? A. It's sandy. Q. Was it damp or dry? A. I wouldn't hardly say about damp, because it has been so long. Q. Was it soft or hard? A. It was soft, the dirt was. Q. As you all were driving along there in that truck who was driving the truck? A. At the time of the turn over? Q. Yes. A. Pete Conyers Davis. Q. Where were you sitting? A. Was sitting on the righthand side. Q. On the outside? A. Yes sir. Q. Where was Elish sitting? A. Lish was sitting in the middle. Q. Have you ridden in trucks before, Robert? A. Yes sir. Q. Have you ridden in automobiles before? A. Yes sir. Q. Are you familiar with the speeds of automobiles and trucks when you ride in them? A. Yes sir. Q. Do you have any estimate as to what speed you all were going just before you turned over there? A. I would say no less than fifty miles an hour. Q. You were going down the road there just before you turned over, and at the time you turned over will you tell the jury the manner in which that truck was being

driven? A. I would say when we started where they picked me up at, I would say from here to the Three Forks, about how far it was, we turned over; when they picked me up they started speeding and I told them to slow down, and he kept speeding. I said slow down again, don't, I'm going to jump out, so he just kept speeding and kept speeding, so when he got in that sort of a curve, it's not deep, but it's a curve there, when he got in that curve the truck got aloose and started sliding from one side to the other when we got down there, try to jerk it back straight, when it went to the right, jumped across the ditch before it turned over, that's when it knocked the front wheels and everything out from under it, turned over on the left side. Q. Did it make any markings on the ground out there? A. Yes sir. Q. What sort of markings did it make? A. Just plowed it up from one side to the other. Q. Plowed up the road? A. Yes sir. First started to the left and pulled it back, and it started toward the right, pulled it back, and it started toward the left and come back to the left, and that's when he turned over. . . Q. And this road had just recently been scraped? A. Yes sir. Q. What was that you were saying about dirt on the road? A. It was a pile of dirt in the road, three or four piles, maybe six, I don't know how many was in there, but lots of them was in the road I know. When we first hit the first one we started sliding and turning. Q. You say when you hit the first one you started sliding and turning? A. That's right, and slipping and turning. Q. How far was it from the first one to the second one? A. They were all there together. Q. And those piles of dirt were just around the curve? A. Yes sir, just around that little turn. Q. Just as you come around that little turn, all of a sudden there's a pile of dirt? A. Yes sir, some piles of dirt, wasn't very tall, but it was enough at the speed we was running to turn over. . . Q. And what actually happened was that all of a sudden these piles of dirt appeared in the road, and it was the dirt that cut the wheels, wasn't it? A. I reckon it was, I don't know exactly. . . Q. Mr. Lowe asked you did these piles of dirt appear all of a sudden. I asked you awhile ago, were you able to see the piles of dirt from where you were sitting in the truck? A. Yes sir. Q. Were you able to see it

before you got to it? A. Yes sir, about as far from here to the door over there."

Under the rulings in *Fletcher* v. *Abbott,* 92 *Ga. App.* 364 (88 S. E. 2d 445); *Thomas* v. *Etheridge,* 89 *Ga. App.* 367 (79 S. E. 2d 425); and *McGowan* v. *Camp,* 87 *Ga. App.* 671 (75 S. E. 2d 350), this evidence would have authorized the jury to find that the decedent was guilty of gross negligence in the operation of the truck.

The court did not err in denying the motion for a judgment notwithstanding the verdict and in denying the motion for new trial.

*Judgments affirmed. Quillian and Nichols, JJ., concur.*