WARD *v.* GEORGE.

4-4872

Opinion delivered December 20, 1937.

*Warner & Warner,* for appellant.

*Hardin & Barton, Partain & Agee* and *Ralph W. Robinson,* for appellee.

SMITH, J. Appellee was injured while riding with appellant in appellant's car, and recovered a judgment to compensate the injuries thus sustained, and this appeal is from that judgment.

There was no evidence tending to prove a wilful or wanton operation of the car, and the court so instructed the jury. The testimony was to the effect that appellant was guilty of ordinary negligence only. The sole question presented on this appeal is the one of fact, whether, at the time of appellee's injury, he was riding as the guest of appellant.

There are no substantial conflicts in the testimony, and the undisputed testimony of appellee is to the following effect: He and appellant were schoolmates and members of the same high school fraternity. They were close and intimate friends. Appellant organized a dance orchestra, in which he played either the clarinet or the saxaphone. Appellee was a member of this orchestra, and played the piano. Appellant was the manager and conductor of the orchestra, which played for school and other dances, for which service they were paid. The charge made for playing was paid to appellant, and by him divided among the other members of the orchestra.

The members of the orchestra usually assembled at appellant's home to practice their numbers.

Appellee was injured April 2, 1933, at which time, as well as at the time of the trial, both were minors, appellant being 17 years old and appellee 19. There was to be held in Fort Smith, where both boys resided, a band contest, participated in by high school bands from various schools of the state. The contest was to be held on both Friday and Saturday, some of the bands playing one day, the others the next. Interspersed were certain contests between individual members of the bands. Appellant was a contestant both as a clarinet and saxophone player. He was to play one instrument one day, the other the next. About five days before the contest appellant asked appellee to play his accompaniments on the piano. There was no promise or expectation of compensation for this service. They met at appellant's home to practice, and were to have a final practice at the high school building on the morning of the contest before the contest began. The boys who were members of the bands from other cities were entertained in the hospitable homes of citizens of Ft. Smith, and two of these boys from Pine Bluff were being entertained at the home of appellant's mother. The afternoon before the contest appellant told appellee that he would come for him in his car early the following morning and have their practice. Appellant called for appellee about 7 a. m., and promised to drive appellee home after the contest. They drove to appellant's home, and found the visiting boys dressing. Appellant and appellee practiced for a while before breakfast. After breakfast, it was a little early to start for the high school, and the four boys got in the family two-seated automobile. Appellant and one of the visitors occupied the front seat. Appellee and the other visitor occupied the rear seat. They drove to the high school building, but did not stop. No one suggested that they stop, nor did any member of the party protest against continuing their drive. They drove across a bridge about half a mile from the place of the accident, and appellee asked appellant to drive slower. As they drove along, a cow came into the road. Appellant applied his brakes

and the car skidded into a ditch and appellee was injured. It is unnecessary to discuss the extent of appellee's injuries, as no complaint is made that the verdict is excessive, if appellant is, in fact, responsible for the damages.

Appellee was returned to his home after the injury, and when appellant advised his mother of the accident she directed a physician to go at once to appellee's home. The physician went, and found it necessary to make only one visit. Appellant's mother paid for this service. She called appellee's home and inquired about him, and in the course of the conversation asked if appellee would be able to play appellant's accompaniments. Appellee's mother answered that she did not think he would, and there was no insistence that he should do so. Appellee insisted, however, that he was able to play, and he did in fact accompany appellant on the piano on both Friday and Saturday. This action was entirely voluntary, as was also participation in the drive which terminated in appellee's injury. No testimony was offered at the trial that appellant had ever employed appellee, and it appears quite certain that they were participating in the contest and in the practice incident thereto for their mutual pleasure and experience. It is true, however, that after defendant had closed his case in the trial below, the plaintiff was recalled and testified that in the preceding summer appellant had given him a blue suit of clothes, which appellant had outgrown. Although younger, appellant was the larger. Appellee admitted, however, that at that time he had not been asked to accompany appellant. They had not then commenced to practice for the contest, and there is nothing to indicate that the gift of the clothes was intended as compensation for services thereafter to be rendered. It was very clearly a disinterested act of friendship, and there was no testimony to support a contrary finding.

At the time of the accident appellant was driving to Wildcat Mountain with no purpose except to be hospitable to his visiting guests, and appellee was voluntarily sharing the pleasures of this drive. It appears to us, both as a matter of fact and of law, that appellee was as much a guest on this occasion as were the two boys from Pine Bluff.

It is said in appellee's briefs that "He does not contend that he was employed or paid for the service and accommodations that he was rendering and extending to the defendant in this case when this accident occurred. It is the contention of the plaintiff, however, that he was not a guest at sufferance or a self-invited guest, and did not come within the meaning of the term 'guest,' as used in act 61 of the Acts of 1935, and that, therefore, this act is not applicable." The basis of this argument is that appellee "was in the car for no other purpose than the benefit of the defendant herein."

This act No. 61 of the Acts of 1935, now appearing as §§ 1302 and 1303 of Pope's Digest, was construed and held to be constitutional in the cases of *Roberson* v. *Roberson,* 193 Ark. 669, 101 S. W. 2d 961, and *Southern Kansas Stage Line Co.* v. *Ruff,* 193 Ark. 684, 101 S. W. 2d 968. We found it unnecessary in those cases, and we find it unnecessary now, to pass upon the companion act on the same subject enacted at the same session of the General Assembly numbered 179, which appears as § 1304 of Pope's Digest.

This act 61 declares that no person transported as a guest in an automobile while upon the public highways shall have a cause of action against the owner or operator of the vehicle for damages on account of any injury occasioned by the operation of such vehicle, unless it was wilfully and wantonly operated in disregard of the rights of the guest, and further that "the term 'guest,' as used in this act, shall mean self-invited guest or guest at sufferance." Was appellee a guest self-invited or a guest at sufferance?

Considering the evil which this statute was intended to remedy, that of collusive suits where the real defendant was an insurance company, in which both host and guest were interested in establishing liability, the legislative intent appears to be to eliminate the distinction between persons riding in another's car with or without an invitation to do so. The statute applies in one case as well as in the other. A majority, and an increasing number of the states, have found it necessary to enact legisla-

tion to correct the abuses against which the legislation was directed.

If act 61 does not apply here, it would be difficult to find a case in which its application might not be avoided, and especially so in cases where both host and guest collaborated to establish liability. This act was designed to prevent these collusive suits. There is no intimation here of collusion, but if appellee is held, under the facts in this case, not to be a guest, the door is opened wide for fraud and collusion and the practical value of the act has been destroyed. Our statute eliminates the distinction between invited guests and licensees. The statute does not exempt the operator of the car from liability to either invited guests or licensees where such persons are injured through the wilful or wanton operation of the vehicle. The statute, of course, has no application to passengers who pay for their transportation.

The law of the subject is discussed at length, with numerous citations of cases, in chapter 36 of Berry on Automobiles, and in chapters 63 and 64 of Blashfield's Cyclopedia of Automobile Law and Practice; but we shall attempt no review of these cases and the distinction between them.

In general terms these text-writers say that in determining who are "guests" within the meaning of the automobile statutes the enactments should not be extended beyond the correction of the evil which induced their enactment, as they are in derogation of the common law. A general summary of the law appearing at § 2292 of Blashfield's Cyclopedia of Automobile Law and Practice reads as follows: "One important element in determining whether a person is a guest within the meaning and limitations of such statutes is the identity of the person or persons advantaged by the carriage. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operator for their common benefit, or if it

is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments. Of course, a passenger for hire is not within their operation, regardless of whether the passenger or some one else pays or promises to pay for the transportation.''

Here, it is expressly conceded that the relationship of master and servant did not exist, and appellee did not even indirectly pay for his ride. Their association was voluntary and for their mutual pleasure. There was no occasion for the trip to Wildcat Mountain except to entertain the Pine Bluff boys. It was just such a trip as is taken on innumerable occasions by innumerable boys and girls, and their elders as well, and our guest statute, *supra,* denies a recovery to any member of such a party except for injuries resulting from the wilful or wanton operation of the vehicle.

The judgment must, therefore, be reversed, and as the case appears to have been fully developed, it will be dismissed.