SPLAWN, ADMINISTRATRIX *v.* WRIGHT.

4-5477                                          128 S. W. 2d 248

Opinion delivered May 8, 1939.

*Buzbee, Harrison, Buzbee & Wright,* for appellant.
*Bob Bailey* and *Ohmer Burnside,* for appellee.

HOLT, J. `This appeal comes from a judgment of $10,000.00 in favor of appellee against appellant for injuries received by appellee on December 4, 1937, while a guest in the automobile of appellant's intestate, Jack Splawn.

The principal allegations of negligence relied upon by appellee in her complaint are that Jack Splawn, driver of the automobile in question, was guilty of willful misconduct, or willful and wanton operation of his automobile, in driving "at a very excessive, fast and dangerous rate of speed over a road made slick and rough by recent rains"; in not "stopping or slowing down said automobile when so requested by the plaintiff"; and "by attempting to turn on the heater in said automobile while traveling at a high, excessive and dangerous rate of speed."

Appellant answered, denying every material allegation in the complaint, and further alleged as a defense that appellee was at the time of her injuries a guest in the automobile of her intestate, Jack Splawn, and specifically pleaded §§ 1302-4 of Pope's Digest of the Statutes of Arkansas in bar of appellee's alleged cause of action.

The evidence as reflected by this record, stated in its most favorable light to appellee, is substantially as follows: Appellee was twenty-eight years of age and a

school teacher at Dyess Colony at the time of the accident, earning $75.00 per month. She lived in a teacherage at the Colony with five other teachers. She was acquainted with Jack Splawn, who was a bookkeeper at the Colony.

About nine o'clock on the night in question, appellee, along with two other young lady teachers and two young men, including Mr. Splawn, went driving in an automobile driven by Splawn. It was turning cold, raining and foggy. She was in the middle of the back seat between one of the other young ladies and a Mr. Sisk. Mr. Splawn was driving the car, a tudor Ford V-8, and one of the other ladies was on the front seat with him. They had ridden only a short distance when Mr. Sisk suggested changing places with appellee, and quoting appellee, ". . . as we changed the road was slick and we had come around a curve while changing and the car threw me to one side. I said, 'Jack, be careful, you're driving too fast.' He didn't pay any attention. In a few seconds he reached down to turn on the heater or to adjust it and lost control of the car.'' Appellee spoke loud enough to Jack Splawn for him to hear her. After rounding the curve they then proceeded to travel at a speed of from forty to forty-five miles per hour on the straight gravel road for a distance of about a quarter of a mile, when one of the ladies exclaimed, "Look out"; that immediately the car plunged into a bridge railing, causing injuries to appellee. Her leg was broken and she was otherwise hurt, and Mr. Splawn, the driver, was killed.

The point of the accident was about one mile from the teacherage. It was always muddy when it was raining and appellee asked Splawn to be careful because the car had skidded and that is what threw her to one side. They had just turned the curve at that time. The curve was about a quarter of a mile from the bridge where the accident happened. Mr. Splawn was not drunk. The gravel road was about twenty-six feet wide and the bridge on which the collision occurred is approximately eighteen feet wide. Two cars can pass on it with room to spare.

J. E. Terry, witness for appellee, testified: "A. At the time I went up there, or at the time I left the house I will say, it was misting and drizzling and the visibility was bad. Most any speed would have been hazardous. You couldn't see far. . . . The car had not been moved from the point of the accident at the time I got to the scene. . . . Q. Did you notice the path or trajectory of the car as it left the road preceding the hitting of the bridge? A. Yes, sir. Q. The marks were plainly observable in the road when you got there? A. Yes, sir, they were. Q. Was there a gradual veering off from the center of the road to the point where the bridge was struck? A. Yes, sir. Q. About how far back would you say those marks extended? A. From where they just began veering off, somewhere in the neighborhood of a hundred yards, I guess. Q. That is your best estimate about it? A. Yes, sir. Q. That was just a gradual slow veering to the point of the impact? A. Yes, sir. Q. You don't know how slow the veering was to the point of the impact? A. No, sir. Q. Just a gradual straight line? A. Yes, sir."

On this state of the record appellant urges here but one error: The failure of the trial court to direct a verdict in her favor. Appellant earnestly insists that the sole proximate cause of the injuries to appellee was the simple negligence of Jack Splawn in reaching to adjust the heater on the extreme right side of the car in question.

It is undisputed in this case that at the time of the collision of the car with the bridge railing appellee was a guest in the automobile of appellant's intestate.

Sections 1302-4, Pope's Digest of Arkansas, commonly called the Guest Statute, which apply here, provide: "That no person transported as a guest in any automotive vehicle upon the public highways of this state shall have a cause of action against the owner or operator of such vehicle for damages on account of any injury, death or loss occasioned by the operation of such automotive vehicle unless such vehicle was willfully and wantonly operated in disregard of the rights of the others.

"The term guest as used in this act shall mean self-invited guest or guest at suffrance."

Under the provisions of this statute before appellee can recover she must show by substantial testimony that appellant's intestate, Jack Splawn, at the time of the collision willfully and wantonly operated his automobile in disregard of appellee's rights. Whether an automobile is being operated in such a manner as to amount to wanton and willful conduct in disregard of the rights of others must be determined by the facts and circumstances in each individual case.

In the instant case, giving to appellee's testimony its strongest probative force in her favor and indulging every inference reasonably deducible therefrom, we think the most that can be said of it is that, Splawn, the driver of the car, was guilty of nothing more than a simple act of negligence by reaching to the right to adjust the heater in the front of the car.

It is undisputed that Splawn had not been drinking, that the road was straight for a quarter of a mile to the bridge, that the car was traveling not to exceed forty-five miles per hour in wet gravel at the time, and that the path or tracks of the car for 100 yards before it left the road just preceding the striking of the bridge railing, gradually veered, in practically a straight line, from the center of the road to the point where the bridge was struck. And in appellee's own words, "We had only driven a short distance when Mr. Sisk said, 'Let's change places, Charlie Mae,' and as we changed the road was slick and we had come around a curve while changing and the car threw me to one side. I said, 'Jack, be careful, you're driving too fast.' He didn't pay any attention. In a few seconds he reached down to turn on the heater or to adjust it and lost control of the car." We think this testimony falls far short of that degree of negligence that would be required to support a verdict for willful and wanton operation of the car on the part of Splawn, the driver.

In the recent case of *Ward* v. *George*, 195 Ark. 216, 112 S. W. 2d 30, where the facts are similar to the instant case, this court said: "After breakfast, it was a little early to start for the high school, and the four boys got

in the family two-seated automobile. Appellant and one of the visitors occupied the front seat. Appellee and the other visitor occupied the rear seat. They drove to the high school building, but did not stop. No one suggested that they stop, nor did any member of the party protest against continuing their drive. They drove across the bridge about half a mile from the place of the accident, and appellee asked appellant to drive slower. As they drove along, a cow came into the road. Appellant applied his brakes and the car skidded into a ditch and appellee was injured. . . . There was no evidence tending to prove a willful and wanton operation of the car, and the court so instructed the jury. The testimony was to the effect that appellant was guilty of ordinary negligence only." To show ordinary or simple negligence is not enough, in fact it would not be sufficient if gross negligence were shown.

This court has laid down the rule that in order to sustain a recovery under our Guest Statute, *supra,* the negligence must be of a greater degree than even gross negligence, that it must be willful or wanton. In the recent case of *Froman* v. *J. R. Kelley Stave & Heading Co.,* 196 Ark. 808, 120 S. W. 2d 164, the difference between gross and willful and wanton negligence is very clearly defined. We quote from the opinion as follows: "The Supreme Court of Vermont points out the distinction in the case of *Sorrell* v. *White,* 103 Vt. 277, 153 Atl. 359, in an opinion which comports with our own decisions on the question. Malcom, in his work on Automobile Guest Law, quotes from that case as follows: '. . . Our inquiry must be directed to the difference between gross negligence and willful negligence. There is a distinction between them. Willful negligence is a greater degree of negligence than gross.

" 'To be willfully negligent, one must be conscious of his conduct, and, although having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury.

" '. . . Willful negligence means a failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another.

" 'Herein, we think, lies the distinction between gross and willful negligence as intended by the statute. Gross negligence falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. . . . Willful negligence involves the element of conduct equivalent to a so-called constructive intent.

" 'It must be admitted that this distinction is somewhat artificial, but artificiality is unavoidable when one attempts to define a phrase which in itself is a contradiction.'

"Our case of *Hodges* v. *Smith,* 175 Ark. 101, 298 S. W. 1023, was an automobile case, although it did not involve our Guest Statute. In that case a judgment had been recovered for both compensatory and punitive damages. In reversing so much of the judgment as awarded punitive damages, Judge HART said: 'It is earnestly insisted, however, by counsel for the defendant, that the court erred in submitting to the jury the question of punitive damages, and in this contention we think counsel are correct. In *St. L. S. W. Ry. Co.* v. *Owings,* 135 Ark. 56, 204 S. W. 1146, it was held that negligence alone, however gross, is not sufficient to justify the award of punitive damages. There must be some element of wantonness or such a conscious indifference to the consequences that malice might be inferred. In other words, in order to warrant a submission of the question of punitive damages, there must be an element of willfulness or such reckless conduct on the part of the defendant as is equivalent thereto.' In the case at bar there is no element of wantonness or willfulness on the part of the person driving the car which overtook the plaintiff and ran into his car and thereby caused the injuries complained of."

The Court of Appeals of Louisiana on April 1, 1938, in the case of *Surgan* v. *Parker,* 181 So. 86, wherein the facts were much stronger against appellant than in the instant case, in passing upon the question of liability of

the driver of the automobile in question, the liability being controlled by our Guest Statute, *supra,* the accident having happened in Arkansas, among other things, said: "Cases will rarely arise in which it can be shown to a court's satisfaction that collisions or upsets of automobiles, with resultant injury to guests, occur because of 'willful misconduct' of the operator. Those who operate automobiles should have (and when mentally normal, do have) a conscious desire to avert injury to themselves in such operation, at least co-extensive with that not to injure their guests; and since to operate a car in a willfully negligent manner offers a threat to security from injury as great to the operator as it does to the guest, evidence to prove that grade of negligence should be unusually strong and convincing before the operator can and will be convicted of such."

We have carefully examined the authorities relied upon by appellee, but are of the opinion that they do not control here.

Upon the whole case, we conclude that the trial court erred in refusing to instruct a verdict for appellant, at the close of all the testimony, and since the case seems to have been fully developed, the judgment is accordingly reversed and dismissed.

MEHAFFY, J., dissents.