Mrs. Ruth FRISBY, Administratrix of the Estate of Roy L. Frisby, Deceased, Appellant,

v.

OLIN MATHIESON CHEMICAL CORPORATION, Appellee.

No. 16414.

United States Court of Appeals Eighth Circuit.

June 29, 1960.

**940**

Bernard Whetstone, El Dorado, Ark., for appellant.

Robert C. Compton, El Dorado, Ark., for appellee.

Before GARDNER, WOODROUGH and VOGEL, Circuit Judges.

GARDNER, Circuit Judge.

This action was brought by appellant in her representative capacity on behalf of herself as widow of her deceased husband and their five children to recover damages on account of the wrongful death of Roy L. Frisby, husband of Ruth Frisby and father of their five children. At and prior to the time of the accident Gene Hathcoat had been and was employed by appellee as a truck driver, hauling loads of lumber from appellee's mill at Huttig, Arkansas, to appellee's customers in various parts of the country. We shall hereinafter refer to the parties as they were designated in the trial court.

Roy L. Frisby and Gene Hathcoat were intimate friends of long standing. Gene Hathcoat, as defendant's employee, had a load of lumber which he was about to transport to Memphis, Tennessee, in defendant's truck. Frisby asked permission to ride with Hathcoat as far as Pine Bluff, Arkansas, where his father resided. There was evidence that when they arrived at Pine Bluff, Hathcoat invited Frisby to accompany him further, which he did. After leaving Pine Bluff, and at a point about ten miles before reaching Stuttgart, Arkansas, the truck left the left-hand side of the paved highway and traveled a distance of 100 yards on the shoulder of the road where it struck a culvert and turned over, resulting in the death of both the driver, Gene Hathcoat, and his companion, Roy L. Frisby. There were no eye witnesses to the accident and plaintiff relies to a considerable extent on the physical facts and surrounding circumstances in support of her complaint.

There was evidence that defendant had a rule against permitting anyone to ride on the truck, other than the driver, and there was a "No Riders" sign on the windshield. The evidence was in dispute as to whether or not this rule had been strictly observed and the evidence was also in dispute as to whether defendant had knowledge of violations of the rule. The evidence will be further developed in the course of this opinion.

At the close of all the evidence defendant interposed a motion for a directed verdict on substantially the following grounds: (1) that Frisby was a trespasser on defendant's truck; (2) that at best Frisby was a guest; (3) that there was no evidence proving any negligence; and (4) that there was no proof of wilful and wanton negligence. The court granted this motion and in so doing, after stating the various grounds on

which plaintiff sought to recover, said in part:

"* * * I have had difficulty in finding the proof in the case—from the testimony in the case—to sustain the allegations of either simple negligence on the part of Mr. Hathcoat or any negligence on the part of Olin Mathieson Chemical Corporation in furnishing the equipment and the loading. We can't assume it. We can't speculate and we can't conjecture. It is not a question of whether the doctrine of Res Ipsa Loquitur controls or even attaches. The uncontradictory testimony is that this man was invited or that is he went along, call it an invited guest or a volunteer or what not, but he went along contrary to the rules of the company. My view of it is that there just isn't any liability on the part of Olin Mathieson at all. He was a guest, at least he started out to be a guest. I think we would have to admit that. The driver had no right, Mr. Hathcoat had no legal right to invite him to ride to bind the company. I think that is definitely established. I just don't see, gentlemen, any ground to submit your case to the jury on."

In due course the court entered judgment dismissing plaintiff's action on its merits.

Plaintiff seeks reversal on substantially the following grounds: (1) whether Frisby was a guest or a passenger was a question of fact to be determined by the jury on proper instructions; (2) whether defendant's rule against permitting riders to accompany the driver of its truck was being violated was a question of fact to be decided by the jury and not a question of law to be determined by the court; (3) the court erred in holding as a matter of law that the driver of the truck was, under the evidence, not guilty of either simple negligence nor wanton negligence; and (4) the court erred in holding the res ipsa loquitur rule did not apply to the facts as proven.

■ Where a motion for a directed verdict has been sustained we must view the evidence in a light most favorable to the party against whom the verdict has been directed. The Arkansas guest statute provides in part as follows:

"No person transported as a guest in any automotive vehicle upon the public highways * * * shall have a cause of action against the owner or operator of such vehicle * * * for damage on account of any injury, death or loss occasioned by the operation of such automotive vehicle or aircraft unless such vehicle or aircraft was wilfully and wantonly operated in disregard of the rights of the others." Ark.Stats.Anno. (1947) Sec. 75–913.

■ The contested question of fact was whether Frisby was a guest or a passenger. If a guest, within the purview of the Arkansas statute, then no recovery could be had in this case. As above noted, there was a "No Riders" sign on the windshield of the truck and there was evidence that this reflected the rule of the company. There was, however, evidence that notwithstanding this rule riders had been carried by the driver of this truck, and there was evidence from which the jury could have found that the employer was charged with knowledge of this breach of the rule and had not protested. In Liggett & Myers Tobacco Company v. De Parcq, 8 Cir., 66 F.2d 678, 685, we held that the employer was not liable for injury to a rider in a conveyance driven by an employee which had a rule against carrying riders. In that case, however, there was no evidence that the owner of the vehicle saw any passenger riding with the driver but only evidence that the driver had carried riders with him on various occasions prior to the accident. In the course of that opinion, however, we said:

"But, while the employer is not liable under the circumstances recited, he may become liable if impliedly or expressly he authorizes the employee to transport passengers, in

which event he will be liable for the employee's negligence, even though there was a rule forbidding the employee so to do. (citing cases) The promulgation of a rule will not protect the employer from liability where the employer does not himself respect it. (Citing cases)."

There was direct evidence that riders were permitted to ride on this truck. One C. A. Hathcoat was interrogated and answered as follows:

"Q. When you were riding on this truck with Gene did you all encounter Mr. Truman Burns? A. Yes, sir.

"Q. Where did you see him? A. At his home.

"Q. At Mr. Truman Burns' home? A. Yes, sir.

"Q. Who does Mr. Truman Burns work for? A. I wouldn't know.

"Q. What connection did Mr. Truman Burns have with the truck that you all were driving? A. As far as I know he was dispatching the truck.

"Q. Dispatcher of the truck? A. Yes, sir.

"Q. Did he see you riding in that truck with Gene? A. Yes, sir.

"Q. Were you working with Olin Mathieson? A. No, sir.

"Q. Did he say anything to you or Gene either one about being on the truck? A. No, sir.

"Q. Did he make any objection? A. No, sir.

"Q. Did he say anything to you or Gene either one about you being on the truck? A. No.

"Q. Have you ridden any other times with Gene on any Olin Mathieson truck? A. Yes, sir.

"Q. Had anybody ever objected to you about it? A. No, sir."

The Truman Burns referred to was a witness on behalf of the defendant and he testified, among other things, as follows:

"Q. How many drivers do you supervise that are on the payroll of Olin Mathieson, Mr. Burns? A. Today?

"Q. We will say in April 1958? A. I believe it was eight.

"Q. How many now? A. Six.

"Q. Mr. Burns, would you state whether or not there was a company policy or rule applied to the drivers with reference to carrying passengers upon those trucks? A. Yes, sir.

"Q. Would you tell the court and jury what that rule was? A. Not to carry any passengers at any time.

\*  \*  \*  \*  \*  \*

"Q. Mr. Burns, how did Mr. Gene Hathcoat know of this rule of the company? A. How did he know it?

"Q. How did he know it? A. I told him.

"Q. Did you tell him on one occasion or more than one occasion? A. More than one. Several times. He was told before he ever went to work for the company that he would not be allowed to carry any passsengers.

"Q. Was he told after he went to work for the company? A. Yes, sir.

"Q. Mr. Burns, did you ever know to your own personal knowledge that at any time Mr. Hathcoat was driving for Olin Mathieson Chemical Company that he carried any passenger with him? A. No, I did not."

There was a clear conflict in the evidence as to whether the defendant knew the driver of the truck was violating the rule of the company forbidding the carrying of passengers. Mr. Burns certainly was representing the defendant in this very matter and was charged with enforcing the "No Riders" rule, and according to the testimony on behalf of plain-

tiff Mr. Burns had seen Hathcoat carrying a passenger on the very trip which ended in the fatality and that he made no objection or protest. This, we think, raised the question as to whether the rule forbidding the carrying of passengers was violated with the knowledge of defendant and this question should have been submitted to the jury under proper instructions.

■ There was evidence from which the jury might have found that Hathcoat expected Frisby to render him some assistance in unloading the lumber and in helping to keep him awake, and that he was not a mere social guest. Under such circumstances the guest statute could not be invoked. Arkansas Valley Co-op. Rural Elec. Co. v. Elkins, 200 Ark. 883, 141 S.W.2d 538; Ward v. George, 195 Ark. 216, 112 S.W.2d 30; McMahon v. DeKraay, 70 S.D. 180, 16 N.W.2d 308. In Ward v. George, supra, the Supreme Court of Arkansas cites with approval Section 2292 of Blashfield's Cyclopedia of Automobile Law and Practice which reads as follows:

"One important element in determining whether a person is a guest within the meaning and limitations of such statutes is the identity of the person or persons advantaged by the carriage. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operator for their common benefit, or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments. Of course, a passenger for hire is not within their operation, regardless of whether the passenger or some one

else pays or promises to pay for the transportation."

The Arkansas guest statute was pleaded as an affirmative defense and hence the burden of proof on that issue was on the defendant. We are of the view that the question as to whether or not Frisby was within the purview of the Arkansas guest statute, a guest, was a question of fact which the court should have submitted to the jury.

■■ It remains to consider whether there was substantial evidence sustaining the charge of negligence. The question of negligence is ordinarily a question of fact to be decided by the jury and not to be determined by the court. We are of the view that the court was clearly right in deciding that there was no substantial evidence sustaining the charge of wilful and wanton negligence. Steward v. Thomas, 222 Ark. 849, 262 S.W.2d 901; Splawn v. Wright, 198 Ark. 197, 128 S.W. 2d 248; Edwards v. Jeffers, 204 Ark. 400, 162 S.W.2d 472.

■ There were no surviving eye witnesses to the accident and the question of whether or not there was ordinary negligence is dependent upon the physical facts and attending circumstances. As has been observed, the physical facts showed that this truck traveled a distance of 100 yards on the left side of the paved highway, continuing on the left shoulder, before it overturned. The law of the road required that it be driven on the right half of the highway. Ark.Stats. Sec. 75–607. There was no explanation as to why the truck left the right half of the highway. There was some evidence that the driver had at a prior time complained as to the condition of the brakes. The physical facts indicated that the driver at 4:00 o'clock a. m. allowed his truck to head straight off to his left, off the paved slab, down the left shoulder of the highway for a tape-measured distance of 100 yards without making any effort to apply his brakes or turn to his right, back upon the highway, when his truck rolled over on its left and turned

upside down. He had been driving for a considerable period and there was evidence that he had a tendency to fall asleep while driving. This apparently was one reason why he wished a companion. In any event, the physical facts showed that the law of the road was being violated and this was some evidence of negligence.

■ It is urged too that as the truck was in the possession and control of the defendant, the happening of the unexplained accident gave rise to a presumption of negligence. Bullington v. Farmer's Tractor & Imp. Co., Ark., 324 S.W.2d 517, 519; Hartsell v. Hickman, D.C.Ark., 148 F.Supp. 782. What is said in Bullington v. Farmer's Tractor & Implement Co., supra, indicates that the facts in the present case bring it within the res ipsa loquitur rule. In that case it is said, inter alia:

> "Appellees' second point is that there is no substantial evidence of negligence on the part of Eaton. We think the doctrine of res ipsa loquitur applies. Eaton was driving the car at about 50 miles per hour on a good hard surface road. From his statement in Exhibit 8, it can be inferred that he was watching the oil pressure gauge and not the road. If such were a fact, it would be a question of fact for the jury as to whether Eaton was negligent. *But in any event, the circumstances were such as to place upon Eaton the duty of explaining his action of driving off the highway.* (Italics supplied.)"

Here the truck involved was under the exclusive control and management of the defendant and there was no explanation on behalf of the defendant as to the action of its driver in driving off the highway.

We have given careful consideration to all other contentions of appellant but are of the view that further consideration of them would serve no useful purpose. The judgment appealed from is therefore reversed and the cause remanded to the trial court with directions to grant plaintiff a new trial.