**Herman GOODMAN, an Incompetent, by and through the duly appointed guardian of his Estate, Daisy Goodman, Plaintiff-Appellant,**

**v.**

**W. H. McCULLEY, Defendant-Respondent.**

No. 49366.

Supreme Court of Missouri,

Division No. 1.

April 8, 1963.

Motion for Rehearing or to Transfer to Court En Banc Denied May 13, 1963.

Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, Paul L. Bradshaw, Warren S. Stafford, Springfield, for appellant.

Claude T. Wood, Richland, Charles H. Howard, Hendren & Andrae, Jefferson City, for respondent.

HOLMAN, Commissioner.

Plaintiff sustained severe personal injuries when an automobile (owned and operated by defendant) in which he was riding left the highway and overturned. In this action plaintiff sought to recover damages for his injuries in the sum of $200,000. A trial resulted in a verdict for defendant. Plaintiff has duly appealed and here contends that the court erred in giving Instructions D–3, D–4, D–5, D–6, and D–7. Defendant's position in this court is that said instructions were not erroneous, and, in any event, plaintiff is not entitled to recover because, as a matter of law, he was a guest within the meaning of the applicable Arkansas Guest Statutes.

On the dates hereinafter mentioned plaintiff's home was near Dixon, Missouri, and defendant lived in Stoutland, Missouri. Both parties were employees of the Frisco Railroad and, in September, 1957, were temporarily assigned to a project near Amory, Mississippi. On September 20, 1957, plaintiff and defendant left Amory shortly after noon in defendant's car enroute to their homes in Missouri. At about dusk, as the car reached the crest of a hill

near the town of Imboden, Arkansas, it entered a rather sharp turn to the left and when defendant applied the brakes the car got off on the dirt shoulder, left the highway, and overturned. Defendant received only slight injuries, but plaintiff, who was asleep at the time, was thrown from the car and badly injured. He was unconscious for about ten days following the casualty. After receiving emergency treatment plaintiff was taken to the Frisco Hospital in St. Louis where he remained until January 25, 1958. An examination disclosed that he had sustained a fractured skull and a fracture of the right hip, tibia, and ankle bone. As a result of brain damage plaintiff developed post traumatic epilepsy.

The principal controverted issue in the trial related to the question of whether plaintiff was a guest within the meaning of the Arkansas statutes. Those statutes read as follows:

"75–913. No person transported as a guest in any automotive vehicle upon the public highways or in aircraft being flown in the air, or while upon the ground, shall have a cause of action against the owner or operator of such vehicle, or aircraft, for damage on account of any injury, death or loss occasioned by the operation of such automotive vehicle or aircraft unless such vehicle or aircraft was wilfully and wantonly operated in disregard of the rights of the others.

"75–914. The term guest as used in this act [§§ 75–913, 75–914] shall mean self-invited guest or guest at sufferance.

"75–915. No person transported or proposed to be transported by the owner or operator of a motor vehicle as a guest, without payment for such transportation * * shall have a cause of action for damages against such owner or operator, or other persons responsible for the operation of such car, for personal injury, including death resulting therefrom, by persons while in, entering, or leaving such motor vehicle, unless such injury shall have been caused

by the wilful misconduct of such owner or operator. * * *"

There was no contention in this case that the automobile was wilfully or wantonly operated. The essential fact issue was whether plaintiff made "payment for such transportation" and hence came within the exception stated in Section 75–915, supra.

By reason of his injuries plaintiff was mentally confused and disoriented for more than two years following the casualty. Dr. Schlicht, who examined him in the fall of 1958 for the Railroad Retirement Board, testified that his "mental status was such that I doubt if he was even aware that I was present." In October 1958, he was adjudged incompetent by the probate court and his wife was appointed his guardian. From the time of the casualty until after January 1960 he could not remember anything about the "trip" in question. However, plaintiff testified that, following a seizure he "had" in a drugstore in Dixon in January 1960, his memory started to return.

After a preliminary inquiry (held outside the presence of the jury) the trial court ruled that plaintiff was a competent witness. In regard to the arrangements for the trip, plaintiff testified that he met defendant the night before they left and "asked him for a ride home"; that no amount was mentioned but "I told him I would pay him"; that defendant said "O. K." and the next day, picked him up at his bunk car; that when defendant picked him up, "I got in the car and sat down, I handed him a five-dollar bill. He taken it out of my hand. Q. (by Mr. Bradshaw): What did you tell him, if anything, that was for? A. I told him that was for my ride. Q. Did he take the five-dollar bill? A. He taken it out of my hand. Q. What did he say? A. He said O.K., and up the road we went. Q. Now was that five-dollar bill ever returned to you? A. No, sir. Q. Do you remember starting up the road with him? A. I remember starting up the road. Q. Now what is the next thing you

remember? A. Waking up * * * I was in the hospital."

Upon cross-examination plaintiff testified as follows: "Q. If I understand you correctly, Mr. McCulley did not ask you to pay, is that right? A. He didn't say * * * he didn't ask me, no. Q. You just handed him five dollars? A. That's right. Q. Now, Mr. Goodman, did you intend that to apply on the expenses? A. Yes, sir. Q. And was that * * * did you estimate that as your share of the expenses to ride home? A. Yes, sir. Q. So what you were doing then, Mr. Goodman, was sharing expenses with him? A. Yes, sir, that is right. Q. And that is all you were doing? A. I was trying to do." He further testified that he had ridden back to Missouri with other workmen on a number of occasions and had always given them $5.00.

Defendant (called as a witness by plaintiff) denied that plaintiff ever paid or agreed to pay him any money. He did testify, however, that "somewhere around Jonesboro, he asked me where I was going to gas up, and I told him I would wait until I crossed the line at Thayer and not have to pay the Arkansas tax. Q. Is Thayer is Missouri or Arkansas? A. Thayer is just a little ways past the Missouri line in Missouri. He said, 'When you gas up, I will go in with you on it.' * * * Q. Up until the point of this accident had he paid for any gas? A. No. Q. Had you stopped for any gas? A. No."

■ Upon the question of negligence plaintiff's case was submitted under the res ipsa loquitur doctrine and there is no contention that he did not make a submissible case thereunder. As stated, the contention of nonsubmissibility is based upon the premise that plaintiff was, as a matter of law, a guest of defendant. In determining that issue we will view the evidence in the light most favorable to plaintiff and disregard the evidence offered by defendant unless it aids the plaintiff.

■ We have concluded that under the evidence in this case the jury reasonably could have found that plaintiff was not a guest within the meaning of the foregoing statutes and hence the court properly overruled defendant's motions for a directed verdict. In that connection it should be noted that said statutes are in derogation of the common law and are to be strictly construed. Rogers v. Lawrence, 227 Ark. 117, 296 S.W.2d 899[2]. And where, as here, there is a dispute as to the facts, the issue as to whether one is a guest is ordinarily a question of fact for the determination of the jury. Brand v. Rorke, 225 Ark. 309, 280 S.W.2d 906. "Whatever may be the law in other jurisdictions, see Annotation, 10 A.L.R.2d 1351, it seems to be well settled in Arkansas that payments by a passenger to the driver raise a fact issue for the jury (or for the Court in an action tried without a jury) as to whether the passenger is a guest under the Arkansas Guest Statute, Ark.Stats. §§ 75–913 to 75–915, or is a fare-paying passenger." Hartsell v. Hickman, D.C., 148 F.Supp. 782, 785. See also, to like effect, McMahon v. De Kraay, 70 S.D. 180, 16 N.W.2d 308, which construed the Arkansas statutes; Ward v. George, 195 Ark. 216, 112 S.W.2d 30[2]; Corruthers v. Mason, 224 Ark. 929, 277 S.W.2d 60; and Brand v. Rorke, supra.

Defendant contends that because plaintiff stated upon cross-examination that he paid the $5.00 as an estimate of his share of the expenses he was, as a matter of law, a guest under the said statutes. We do not agree. The Arkansas cases involving expense-sharing trips have been decided both ways, depending upon the particular facts involved. We will assume, for the purposes of this opinion, that under the law of Arkansas, if plaintiff had voluntarily bought some gasoline for defendant after the journey began, such would not have been sufficient to bring him within the exception to the guest statute. However, that was not the situation here. On the night before they left plaintiff told defendant that he would pay him. The next day, before the

trip began, he paid defendant $5.00 "for my ride," or as he stated in another instance, "I told him that was paying for my way home." This constituted a payment of a definite sum and was sufficient, under the Arkansas decisions, to support a submission of the guest issue to the jury. Plaintiff's mental processes in arriving at the amount he concluded he should pay would not destroy the legal effect of the payment. As indicated, we rule that the issue in question was properly submitted to the jury.

■ Plaintiff's first contention is that Instruction D–3, given at the request of defendant, was prejudicially erroneous. That instruction reads as follows:

"The court instructs the jury that under the laws of the State of Arkansas no person transported as a guest in an automobile upon the public highways in the State of Arkansas may recover damages against the operator of the automobile for injuries, unless there is some agreement between the parties for the payment of compensation in consideration of the transportation.

"One who travels with the owner of a vehicle by invitation of the owner or by his own invitation is a guest within the meaning of the Arkansas Guest Statute unless there is some agreement between the parties for the payment of compensation in consideration of the transportation. A mere voluntary payment by the passenger, voluntary contribution to the expenses of the trip without any agreement therefor and as a matter of courtesy or friendship would not constitute the person contributing or paying a fare-paying passenger.

"You are therefore instructed that unless you find and believe from the evidence *that the plaintiff agreed to pay and did pay, and defendant agreed to accept and did accept, $5.00 for transportation in defendant's automobile* and plaintiff was a fare-paying passenger you must find plaintiff was a guest in defendant's automobile, and if you so find, then you will find the issues for the defendant and against the plaintiff."

We agree with plaintiff's contention. It is our view that the italicized portion of the last paragraph is clearly erroneous. That requires a finding that plaintiff agreed to pay $5.00, and defendant agreed to accept that amount, for said transportation. There is *no* evidence that plaintiff *agreed* to pay, or defendant agreed to accept, $5.00. Plaintiff's testimony was that on the 19th "I told him I would pay him." No amount was mentioned. He stated that on the next day when he got in the car he handed defendant $5.00 which defendant accepted. Since there was *no* evidence that plaintiff agreed to pay $5.00, or that defendant agreed to accept $5.00, and since the instruction required a finding of those facts, in addition to the actual payment thereof, the practical effect of the submission was to direct a verdict for defendant. That, of course, was reversible error.

■ In regard to the first and second paragraphs of the instruction we note that they contain abstract statements to the effect that a voluntary payment without any agreement therefor is not sufficient to remove a person from guest status. We do not think a prior agreement was necessary under the factual situation shown in this case. As we have indicated, the payment and acceptance of the $5.00 "for my ride" at the commencement of the trip was sufficient. The payment herein was voluntary in the sense that it was not demanded or required by defendant. And yet, under *the facts of this case, the voluntary nature* of the payment would not require a finding that plaintiff was a guest. It is therefore clear to us that said abstract statements are not correct statements as to the law of Arkansas. It may be that these statements would not be prejudicial since, as hereinafter set out, plaintiff did submit a prior agreement to pay *some* amount, but we need not determine that question as we have heretofore ruled that the instruction was prejudicial in another respect.

Defendant says that any error in said instruction was common or invited error and plaintiff may not now complain thereof. The first contention is that plaintiff's amended petition pleaded an agreement to pay $5.00. That is not sufficient to invite error. Many allegations are made in pleading which are not proved and which the party need not submit to the jury. There is also no merit in the contention that plaintiff's attorneys, by testimony and by argument to the court, "led the trial court to believe that more than just payment was required to change one from a guest to a fare-paying passenger." We have examined the cited portions of the transcript and do not find that this contention is supported by the record.

It is further contended by defendant that any error in the instruction under review was also present in plaintiff's Instruction P–1 and therefore plaintiff is in no position to complain of D–3. That is not factually correct. Plaintiff's instruction followed precisely plaintiff's testimony. It required a finding that "on or about September 19, 1957, in Amory, Mississippi, plaintiff orally requested the defendant to transport plaintiff in defendant's automobile from Amory, Mississippi, to plaintiff's home in Pulaski County, Missouri, and promised defendant at that time that he would pay defendant for so transporting him, and that defendant agreed to do so; and if you further find and believe from all the evidence that on September 20, 1957, plaintiff did in fact pay to defendant the sum of $5.00 to transport plaintiff from Amory, Mississippi, to Pulaski County, Missouri, and that defendant accepted said sum, if any, in payment for so transporting plaintiff * * *." It is apparent that this instruction did not require a finding of an agreement by plaintiff to pay, or by defendant to accept, *the sum of $5.00,* which submission of fact was the principal error in Instruction D–3. This contention is ruled adversely to defendant.

Since the judgment must be reversed and the cause remanded for a new trial because of the error in giving Instruction D–3, we deem it unnecessary to rule the contentions of error in regard to the other instructions heretofore mentioned. Counsel for defendant will have the opportunity to re-examine those instructions, and, if it is considered advisable to offer them at another trial, may make such corrections therein as may be considered necessary in view of the attack made thereon by plaintiff. In determining whether a "mere fact" instruction similar to Instruction D–5 should be offered by counsel or given by the court upon another trial, we suggest a consideration of the admonitions contained in Wise v. St. Louis Public Service Company, Mo.Sup., 357 S.W.2d 902, and Grote v. Reed, Mo.Sup., 345 S.W.2d 96 [11]

Reversed and remanded.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.