353 F.2d 382
 Clarence TROUTMAN, Appellant,
v.
Mrs. Frances MODLIN, Administratrix of the Estate of Jim Modlin, Deceased, and James T. Gooch, Appellees.
James T. GOOCH, Appellant,
v.
Clarence TROUTMAN, Appellee.
 No. 18075.
 No. 18076.
 United States Court of Appeals Eighth Circuit.
 November 24, 1965.
 
 Alston Jennings, Little Rock, Ark., for Clarence Troutman.
 Sam Laser, Little Rock, Ark., for James T. Gooch.
 No argument was made or brief filed in behalf of Mrs. Francis Modlin, Administratrix, etc.
 Before MATTHES and GIBSON, Circuit Judges, and LARSON, District Judge.
 MATTHES, Circuit Judge.
 
 
 1
 On October 26, 1964, James Gooch set out from Arkadelphia, Arkansas, to attend a Democratic Party dinner and rally in Little Rock, Arkansas. Traveling with him, as passengers in his car, were three friends; among them, Jim Modlin. On Interstate Highway 30, near Little Rock, the automobile operated by Mr. Gooch collided with the rear of an automobile operated by James Wilder, as both vehicles were proceeding in an easterly direction in the left-hand (north) traffic lane. Highway 30, at this point, has two lanes for eastbound traffic and, on the other side of a median, two lanes for westbound traffic.
 
 
 2
 After the collision, the two vehicles stopped in the traffic lane in which the accident had occurred. The occupants of both vehicles alighted, but remained in the vicinity of the cars. Shortly thereafter, a vehicle operated by Clarence Troutman, also traveling in an easterly direction in the left-hand lane, approached the scene of the accident. Jim Modlin, apparently seeking a position of safety, ran from the highway onto the median. Clarence Troutman, instead of turning his vehicle into the right-hand eastbound lane to avoid the accident, swerved to the left and onto the median. His vehicle struck Mr. Modlin, who later died of the injuries he sustained.
 
 
 3
 Mrs. Modlin, as administratrix of her husband's estate, brought suit against Troutman in the Circuit Court of Clark County, Arkansas, praying for a judgment for Modlin's estate in the amount of $2,000, and for herself, as widow, and for each of their four minor children in the amount of $100,000. Because of the existence of diversity of citizenship between plaintiff and defendant, the action was removed to the United States District Court for the Western District of Arkansas, and tried to a jury, Honorable John E. Miller, presiding.
 
 
 4
 Troutman filed a third party complaint against Gooch, seeking contribution as provided by Ark.Stats. 34-1001 through 34-1009 (1947).
 
 
 5
 After trial, the jury found that plaintiff was entitled to recover $10,000 for the estate and $50,000 for the widow and children. The jury further found, in response to interrogatories, that Troutman was 60% at fault and Gooch was 40% at fault. The court entered judgment in favor of plaintiff, and against Troutman, for the amount of the verdict. The judgment further provided:
 
 
 6
 "In accordance with the answers of the jury to the interrogatories submitted to it by the court, it is further ordered and adjudged that upon the satisfaction, or partial satisfaction, of the judgment entered herein in favor of the plaintiff and against the defendant, Clarence Troutman, said defendant as third-party plaintiff in this cause shall have and recover of and from the third-party defendant, James T. Gooch, the sum of money which said defendant and third party plaintiff has paid on said judgment which is in excess of 60% of said judgment."
 
 
 7
 Following denial of Troutman's motion to alter judgment and motion for a new trial, and Gooch's motion for a new trial, Troutman and Gooch perfected appeals to this court.
 
 
 8
 In his brief, Troutman raised two contentions: (1) that plaintiff cannot recover for the estate more than $2,000, the amount prayed for in the complaint, and, therefore, the court erred in denying his motion to alter the judgment, by reducing it from $10,000 to $2,000;[1] and (2) that the form of the judgment is improper as it does not provide for contribution in accordance with the law of Arkansas.
 
 
 9
 Gooch's appeal is focused entirely upon that phase of the case which involves the third party proceeding.
 
 
 10
 Troutman's first contention emanates from plaintiff's failure to amend the ad damnum clause of the complaint wherein, as noted, plaintiff prayed for damages for the estate in the amount of $2,000. After all of the evidence was in, and before the jury was instructed, counsel for plaintiff directed the court's attention to the failure of the complaint to specifically allege, as an element of damage, that decedent had suffered conscious pain before he died. In this connection, counsel stated:
 
 
 11
 "* * * we wish at this time to move the court for permission to amend our Complaint in obedience to the testimony which does clearly indicate damages resulting from conscious physical pain and mental anguish.
 
 
 12
 "The Court: I see no reason why the Complaint shouldn't be considered as amended to conform to that proof.
 
 
 13
 "Mr. Jennings [counsel for Troutman]: There's only one problem there. They have sued to recover for the benefit of the Estate in the amount of $2,000.00 and I don't believe that at this stage of the game they should be permitted to amend so as to increase their prayer for damages.
 
 
 14
 "The Court: I don't think there would be any error in permitting them to do it, and I'm going to permit them to do it over your objection.
 
 
 15
 "Mr. Jennings: All right.
 
 
 16
 "The Court: And the Complaint will be considered as amended to conform to the proof of that item of mental anguish — I mean of conscious pain and suffering."
 
 
 17
 However, the complaint was never physically amended in accordance with the leave thus granted. It is this circumstance which prompts Troutman to assert that he is entitled to a reduction of the judgment, because a judgment in excess of $2,000 cannot stand.
 
 
 18
 We need not tarry long in disposing of this point. Troutman seems to be laboring under the mistaken belief that Arkansas law controls disposition of the question. A like contention was presented to, and rejected by, the Second Circuit in Riggs, Ferris & Geer v. Lillibridge, 316 F.2d 60, 62 (1963). There, the court held: "* * * that this is a matter of procedure, governed entirely by F.R. 54(c), as many cases have held." (citing cases). We agree.
 
 
 19
 Rule 54(c) provides, expressly, that: "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." (Emphasis supplied).
 
 
 20
 Adhering to the mandate of the rule, the courts have consistently held that, where the defendant appears and the parties are at issue, the final judgment shall grant the relief to which the prevailing party is entitled, regardless of the relief demanded. Riggs, Ferris & Geer v. Lillibridge, supra; South Falls Corp. v. Rochelle, 329 F.2d 611, 619 (5 Cir. 1964); United States for Use of Bachman & Keffer Const. Co. v. H. G. Cozad Construction Co., 324 F.2d 617, 619-620 (10 Cir. 1963); Wendy v. McLean Trucking Co., 279 F.2d 958 (2 Cir. 1960); Vol. 3 Barron and Holtzoff, Federal Practice & Procedure, § 1194.
 
 
 21
 Moreover, the proceedings (authorized by Rule 15(b) F.R.Civ.P.) to which we have alluded, supra, had the legal effect of amending the complaint to conform to the proof, and were sufficient to support the jury's verdict.
 
 
 22
 Troutman's second contention, which places in issue the effect of the judgment as it relates to contribution, will be disposed of in connection with Gooch's appeal, which we now consider.
 
 
 23
 Throughout the trial, appellant Gooch contended that he and Modlin were host and guest, within the meaning of Ark. Stats. 75-913 and 75-915 (1947) and, therefore, that Troutman would not be entitled to contribution from Gooch, unless evidence of wanton and wilful misconduct on the part of Gooch was introduced.
 
 
 24
 At the end of Troutman's case, counsel for Gooch moved for a directed verdict, on the basis of the asserted host-guest relationship and an alleged dearth of evidence of wanton and wilful negligence on the part of Gooch. The trial court denied the motion, stating:
 
 
 25
 "* * * assuming that the relationship was that of a host and guest, of course, there's no testimony here to show that Mr. Gooch did anything wilfully or heedlessly about that, but I don't believe that the third party — in other words, I don't think that Mr. Gooch can plead that as a defense against a claim of a third party."
 
 
 26
 Counsel for Gooch later unavailingly requested that the court give an instruction which would have permitted the jury to determine whether Modlin was a guest at "the time he was killed."
 
 
 27
 On his appeal, Gooch's primary contention is that: "The court erred in holding that the defense of the guest statutes of Arkansas was not available to a third party defendant as a defense to bar a claim for contribution for damages sustained by a guest of the third party defendant."
 
 
 28
 Replying to Gooch's assertion of error, appellant Troutman claims that the issue of the relevancy of the guest statute in this third party proceeding "is of academic interest only", for the reasons: (1) that the host-guest relationship never existed, because the sole purpose of Modlin's presence in Gooch's automobile was to confer a benefit upon Gooch, and (2) that if the host-guest relationship ever did exist, it had terminated before the occurrence of the injury which caused Modlin's death.
 
 
 29
 On the assumption that Gooch and Modlin did occupy a host-guest relationship at the time Troutman's vehicle struck Modlin, we first consider whether a third party defendant may avail himself of the Arkansas guest statutes (§ 75-913 and § 75-915) when defending a claim for contribution, a question which has never been before the Arkansas Supreme Court.
 
 
 30
 The two Arkansas guest statutes, in pertinent part, provide:
 
 
 31
 "75-913. * * * No person transported as a guest in any automotive vehicle upon the public highways * * * shall have a cause of action against the owner or operator of such vehicle * * * for damage on account of any injury, death or loss occasioned by the operation of such automotive vehicle * * * unless such vehicle * * * was wilfully and wantonly operated in disregard of the rights of the others.
 
 
 32
 "75-915. * * * No person transported or proposed to be transported by the owner or operator of a motor vehicle as a guest, without payment for such transportation * * * shall have a cause of action for damages against such owner or operator, or other person responsible for the operation of such car, for personal injury, including death resulting therefrom, by persons while in, entering, or leaving such motor vehicle, unless such injury shall have been caused by the wilful misconduct of such owner or operator. * * *" (Emphasis supplied).[2]
 
 
 33
 Thus, it is clear that, under either statute, in order for a guest to recover from the operator of the automobile, he must prove that such operator was guilty of wilful and wanton negligence.
 
 
 34
 As pointed out, Judge Miller was inclined to the view that the record was insufficient to show such negligence on the part of Gooch. Nevertheless, he also unequivocally adhered to the position that the issue of whether or not Modlin was a guest, under Arkansas law, was not a proper subject to submit to the jury in this action for contribution. In this connection, the Judge stated: "I'm ruling that a third party defendant can't avail himself of that defense, guest or no guest."
 
 
 35
 Absent a guest statute, Gooch could be liable for contribution, as a joint tortfeasor (under the provisions of Ark. Stats. 34-1001 through 34-1009), if the jury found him guilty of ordinary negligence.
 
 
 36
 The question, therefore, becomes, may Gooch rely upon the guest statute requirement of wilful and wanton negligence in this third party action for contribution? The question has been considered by the courts of several states. See Blunt v. Brown, 225 F.Supp. 326, 329 (S.D.Iowa 1963); Lutz v. Boltz, 9 Terry 197, 48 Del. 197, 100 A.2d 647 (1953); Hill Hardware Corp. v. Hesson, 198 Va. 425, 94 S.E.2d 256 (1956); Patterson v. Tomlinson, 118 S.W.2d 645 (Tex.Civ.App.1938); Downing v. Dillard, 55 N.M. 267, 232 P.2d 140 (1951). Without exception, these courts (some in jurisdictions having the same Uniform, or Joint, Tortfeasors' Act as Arkansas) have all held that a host may invoke the state guest statute when sued for contribution and that such a host is liable for contribution only if he is sufficiently negligent to be directly liable to the guest under the guest statute.
 
 
 37
 The reason for this is clear. The right to contribution among joint tortfeasors is based upon a common liability to an injured party. Allied Mutual Casualty Co. v. Long, 252 Iowa 829, 107 N.W.2d 682, 684 (1961); Blunt v. Brown, supra; Lutz v. Boltz, supra; Patterson v. Tomlinson, supra; Ark.Stat. 34-1002 (1947). This common liability may be either joint or several, but, in order for there to be a right to contribution, the injured party must have a possible remedy against both the party seeking contribution and the party from whom contribution is sought.
 
 
 38
 The Arkansas Supreme Court, in interpreting the Uniform, or Joint, Tortfeasors' Act, (as it relates to the Workmen's Compensation Law) approvingly quoted from Baltimore Transit Co. v. State to Use of Schriefer, 183 Md. 674, 39 A.2d 858, 860, 156 A.L.R. 460 (1944), as follows: "`We think these provisions make it clear that the [Joint Tortfeasors'] Act is only applicable to a situation where there is a common liability to an injured person in tort. Such liability may be joint or several, but there can be no contribution where the injured person has no right of action against the third-party defendant. The right of contribution is a derivative right and not a new cause of action.'" C & L Rural Elec. Coop. Corp. v. Kincaid, 221 Ark. 450, 256 S.W.2d 337, 341 (1953).
 
 
 39
 We are persuaded that the Arkansas Supreme Court, if confronted with this problem, would reach the conclusion which the courts of other jurisdictions have unanimously reached, on almost identical facts, and would hold that the guest statute is available, as a defense, in an action for contribution.
 
 
 40
 Troutman also defends the court's failure to submit the host-guest relationship issue to the jury on the ground that the evidence establishes, as a matter of law, that such a relationship never existed.
 
 
 41
 The question of who is a guest, within the meaning of the guest statutes, has caused "confusion and conflict", Harper and James, The Law of Torts, § 16.15, p. 958. "* * * [S]ince judges, as well as jurors, sometimes disagree as to the significance of certain facts and the inferences to be drawn therefrom, it is not surprising that the issue as to status of an occupant frequently has bred nagging difficulty and sharp division of judicial opinion." Greene v. Morse, 375 S.W.2d 411, 415-416 (Mo. App.1964). The authorities seem to agree, however, "that the occupant is a guest where he obtains the benefits of the ride and his presence confers none upon the host except the satisfactions of hospitality and social relationships." Harper and James, supra, § 16.15, p. 958.
 
 
 42
 The Arkansas Supreme Court has stated that:
 
 
 43
 "The general rule for determining the status of a passenger in an automobile is that if the transportation or carriage in its direct operation confers a benefit only on the person to whom the ride is given and no benefits other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes (Ark.Stats. § 75-913 to 75-915), but if the carriage tends to the promotion of the mutual interests of both the passenger and the driver for their common benefit, or if the carriage is primarily for the attainment of some objective or purpose of the operator, the passenger is not a guest." Simms v. Tingle, 232 Ark. 239, 335 S.W.2d 449, at 450 (1960).
 
 
 44
 Ward v. George, 195 Ark. 216, 112 S.W. 2d 30 (1937); Buffington v. Wright, 239 Ark. 138, 388 S.W.2d 100 (1965). See also Frisby v. Olin Mathieson Chemical Corp., 279 F.2d 939, 943 (8 Cir. 1960); Greene v. Morse, supra.
 
 
 45
 In the final analysis, the status of the occupant must be determined on the particular facts and circumstances of each case. Generally, the question is one of fact that should be submitted to the jury. "We have repeatedly held that when the status of an occupant of a car is questioned and conclusions must be drawn from the evidence, then the issue is one for the jury." (citing cases). Simms v. Tingle, supra, 335 S.W.2d at 450; Rogers v. Lawrence, 227 Ark. 117, 296 S.W.2d 899, 901 (1956).
 
 
 46
 Consideration of the evidence, in light of the general standard applicable in Arkansas, convinces us that Troutman's position is not soundly premised. We do not subscribe to the view that the evidence compels the conclusion that "the sole and only purpose of the presence of Modlin in the Gooch vehicle was to confer a benefit upon Gooch." It may be true, as Troutman argues, that it was in the interest and for the benefit of Gooch, as Chairman of the Clark County Democratic Committee, to encourage attendance of Clark County citizens at the Little Rock meeting, and that, therefore, he sought out Modlin and requested that he accompany Gooch to the meeting. We believe, however, that this is not the only conclusion that might be drawn from the evidence. Modlin was the Circuit Clerk of Clark County. Another occupant of the Gooch automobile was the County Clerk of the same County, and the fourth occupant was a lawyer and Gooch's brother-in-law. All were active in the Democratic Party. It would not be illogical to conclude, and certainly a jury could find, that the passengers served only their own interests in riding with Gooch to the rally, and he obtained no benefit within the meaning of the Arkansas guest statutes. In any event, we are satisfied, from a careful examination of the evidence, that the question should have been submitted to the jury.
 
 
 47
 As we have seen, Troutman also contends that, if the guest relationship ever did exist, it had terminated before the occurrence of the injury which caused Modlin's death. His theory is that Modlin had disembarked from the Gooch vehicle and had no intention of being transported further in the Gooch automobile.
 
 
 48
 The cases are not entirely definitive as to the circumstances under which a host-guest relationship is terminated. See Ethier v. Audette, 307 Mass. 111, 29 N.E.2d 707 (1940) (guest relationship not terminated when journey was interrupted to obtain sandwiches); Rohr v. Employers' Liability Assur. Corp., 243 Wis. 113, 9 N.W.2d 627 (1943) (guest relationship terminated while guest changing tire); Owens v. Young, 59 Wash.2d 30, 365 P.2d 774 (1961) (guest relationship not terminated when guests left car for few minutes, intending to return and continue on journey); Hunter v. Baldwin, 268 Mich. 106, 255 N.W. 431 (1934) (guest relationship terminated when guest left car for two or three hours to transact business).
 
 
 49
 Generally, a host-guest relationship is terminated only by arrival at the agreed upon, or implied, destination. A temporary interruption of the actual transporting does not terminate the relationship. Owens v. Young, supra. In Ruel v. Langelier, 299 Mass. 240, 12 N.E.2d 735, 736 (1938), the court aptly observed: "* * * [I]t must be clear that the degree of the defendant's duty does not depend upon the physical position of the plaintiff at the moment of the accident, or upon whether she was then in the defendant's automobile or outside of it, or upon whether in everyday language she would be described as a guest. The degree of the defendant's duty depends upon whether the act of the defendant claimed to be negligent was an act performed in the course of carrying out the gratuitous undertaking which the defendant had assumed."
 
 
 50
 From the record, we are unable to determine the amount of time that elapsed, after Modlin alighted from the Gooch vehicle, until he was struck by Troutman, a factor which is very relevant to the question of the termination of the host-guest relationship. We, perhaps, are warranted in assuming that the entire event occurred within a few minutes. Troutman and the court were of the view that an uninterrupted sequence of events led to Modlin's fatal injuries. Thus, Troutman, in his answer to plaintiff's petition and in his third party complaint, alleged, in effect, that Gooch was negligent in striking the vehicle ahead of him and in perpetuating the negligence by failing to remove his automobile from the traveled portion of Interstate Highway No. 30. During a colloquy between the court and counsel for Gooch, in regard to an instruction, the court stated: "I'll overrule that objection because I think it's a question for the jury to determine. It all happened in a space of moments and minutes there [and it is for the jury to say] [w]hether or not it was so connected as to constitute one transaction." In Rogers v. Lawrence, supra, 296 S.W.2d at 901, the court said:
 
 
 51
 "* * * [S]hould the Court leave it to the jury to decide whether, under the facts in each particular case, the guest relationship was terminated when the guest had both feet on the ground and was not touching the car?
 
 
 52
 "We believe the jury should have been allowed to decide the fact question * * *. * * * Our system of jurisprudence leaves fact questions such as these to the jury. In the recent case of Whittecar v. Cheatham, [226] Ark. [31], 287 S.W.2d 578, 579, decided March 5, 1956, we said: `Ordinarily the issue of whether one is a guest is a question of fact. Brand v. Rorke, [225] Ark. [309], 280 S.W.2d 906.'"
 
 
 53
 On this record, we do not feel justified in declaring that, if the host-guest relationship had been in existence, it had terminated before the crucial time involved here. The facts and circumstances were such that a jury should have been permitted to resolve this issue.
 
 
 54
 In summary, we conclude that the court committed prejudicial error in refusing to submit to the jury the question whether, at the relevant time, the relationship between Gooch and Modlin was that of host and guest.
 
 
 55
 We now revert to Troutman's attack upon the form of the judgment, as it relates to his right of contribution. He frankly concedes that this point "will have significance only if the judgment against Appellant Troutman should be satisfied by the payment of some amount less than the amount of the judgment itself." We are in agreement. Accordingly, if, upon another trial of the third party complaint, the jury should again find Gooch partially liable for Modlin's death, the court should enter judgment providing that Troutman, upon full, or partial, satisfaction of the judgment, is entitled to recover from Gooch an amount equal to Gooch's percentage of liability.
 
 
 56
 The judgment in favor of plaintiff, and against Troutman, is affirmed. The judgment providing for contribution is reversed and the cause remanded for another trial of the issues presented by the third party complaint.
 
 
 
 Notes:
 
 
 [1]
 With regard to this contention, counsel for plaintiff manifested a lack of concern by failing to file a responsive brief and appear for oral argument
 
 
 [2]
 While it is immaterial to this suit, there are different situations to which each of these guest statutes may apply. Although both statutes deal with the general subject of guests, the scope of 75-913 is confined to public highways, while the scope of 75-915 is not so limited. See Banko v. Garvin, 229 Ark. 793, 318 S.W.2d 611 (1958)